Everton G. Frenyea

*vs.*

Maine Steel Products Co.

Cumberland        Opinion, January 11, 1934.

*Cook, Hutchinson, Pierce & Connell*, for plaintiff.
*Charles E. Grace, William B. Mahoney*, for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, JJ.

STURGIS, J.    This action on the case for negligence comes to this Court, after verdict for the plaintiff, on the defendant's motion for a new trial and exceptions. There is no essential dispute as to the facts, nor complaint as to the damages awarded by the jury.

MOTION:

On the morning of March 22, 1932, the heavily loaded Federal truck which the plaintiff, Everton G. Frenyea, was driving over the public highway through Hartland, Vermont, was struck by a Model A Ford light pick-up truck owned by the Highway Department of that State and operated by one Fred A. Pickering, who was employed as a road mechanic by the defendant, the Maine Steel Products Co., a manufacturer of road equipment at South Portland, Maine. The collision occurred about nine o'clock in the forenoon on a clear day on a concrete road about eighteen feet wide, which was covered with four or five inches of light snow or hail through which a single set of ruts had been worn by passing cars. At the point of collision, these ruts were at the extreme right-hand side of the road as the plaintiff drove towards White River Junc-

tion. The Ford truck came around a curve and along a level stretch for several hundred feet, traveling on its left-hand side of the road in the same ruts and directly in the path of the oncoming Federal truck. The plaintiff slowed down to three miles an hour. The driver of the Ford truck came straight ahead at fifteen to twenty-five miles an hour until he was close up to the other truck before attempting to turn out onto the right-hand side of the road. His front wheels made the turn, but the rear wheels slewed or skidded sideways and the trucks came together. The plaintiff received minor personal injuries and his truck was badly damaged.

The defendant is not entitled to a new trial on the issue of negligence. The jury were warranted in finding that the sole proximate cause of the collision from which the plaintiff suffered damages was the failure of the driver of the Ford truck to exercise due care in turning from the wrong side of the highway, on which he was traveling, over to the right of the center of it so as to pass without interference the vehicle in which the plaintiff was approaching from the opposite direction. The verdict can not be disturbed on this ground.

The Maine Steel Products Co., admitting it was the general employer of the road mechanic involved in this collision, but denying that he was negligent as found by the jury, contends, however, that he had been previously loaned or let to the State of Vermont and when the collision occurred was driving the Ford truck at and under the directions of the highway officers of that State, and for the time being was its servant. This seems to be the real defense relied on in this action.

The evidence discloses that the Maine Steel Products Co., having sold twenty-three snow plows to the State of Vermont, on February 13, 1932, through its President, George C. Soule, arranged to equip fifteen plows with deflectors, so-called, which had been recently invented and were designed to overcome certain operating defects. It was agreed with the Commissioner of Highways that the deflectors should be furnished and attached without charge. The road mechanic, Fred A. Pickering, was brought from the factory at South Portland, Maine, and left in Vermont with directions to attach the deflectors. His wages and expenses were paid by the

Maine Steel Products Co. Although he was taken about the State by Rupert A. Phelps, Superintendent of Construction of the Highway Department, showed the plows which needed deflectors, and directed by him from time to time as to when and where the attachments should be made, he was in no way otherwise supervised or directed in his actual work.

It seems that the deflectors were shipped, in the first instance, to the State Garage at Montpelier, Vermont, and had to be transported from there to the places where the plows were located, but apparently this distribution of the deflectors was for and at the expense of the Maine Steel Products Co. under its agreement to furnish and attach them free of charge. After the deflectors had been shipped from place to place by rail for a few weeks, apparently on its own initiative and merely as a courtesy, the Highway Department loaned the mechanic a Ford truck for that purpose and he used it thereafter in his work. So far as the record discloses, he was given no special instructions as to the operation or use of the truck, but the inference is that when and where he was directed by the Superintendent of Construction to put on new equipment he was impliedly authorized to use the truck to haul it. The mechanic had been directed to attach a deflector to a snow plow at Hartland and was on his way there with it in the Ford truck when this collision occurred.

It is a universally recognized rule that a master may loan or let his servant to another in such a way that he becomes the servant of the other for the time being. Although the employee in such a case remains the general servant of his regular master, for anything he does in the transaction for which he is loaned or let, his special employer has all the usual liabilities of a master. *Pease* v. *Gardner*, 113 Me., 264, 93A., 550, 552; *Torsey's Case*, 130 Me., 65, 153A., 807. On the other hand, the master may agree with another that he will perform the work of the other through his own servant, who is retained in his service and under his direction and control. If so, the original master remains solely liable for the act of the servant. *Wilbur* v. *Construction Company*, 109 Me., 521, 85A., 48; *Gagnon's Case*, 128 Me., 155, 146A., 82. In determining where the liability rests in this class of cases, the test which has long

and repeatedly been applied is whether, in the particular service which the servant is performing at the time of his tort, he was liable to the general direction and control of his original employer or had become subject to that of the person for whom the work was being done. "It is not so much the actual exercise of control which is regarded, as the right to exercise control." *Pease* v. *Gardner*, supra; *30 C. J. 1275 and cases cited.*

A servant of one employer, however, does not become the servant of another, for whom the work in which he is engaged is performed, merely because the latter points out the work to be done, and superintends its performance. As was said in *Quinby Company* v. *Estey*, 221 Mass., 57, 108 N. E., 908, "When a servant or agent in the general employ of one person is sent to work for another, he does not become the servant of the one to whom he is sent merely because the latter directs what work is to be done, or in what way it is to be done. The original master remains liable and the employee remains his agent, unless the authority to direct and control the servant in all the details of the transaction is surrendered to some other person, so that the business in which the servant is engaged is no longer the business of his general employer, but is in all respects the business of the person to whom he is sent. If the servant remains subject to the general orders of the man who hires and pays him he is still his servant, although specific directions may be given him by another person from time to time as to the details of the work and the manner of doing it." This rule is approved and applied in *Gagnon's Case*, supra; *Wilbur* v. *Construction Company*, supra; *Connolly* v. *People's Gas Light Company*, 260 Ill., 162, 102 N. E., 1057; *Driscoll* v. *Towle*, 181 Mass., 416, 63 N. E., 922; *Scherer* v. *Bryant*, 273 Mo., 596, 201 S. W., 900; *McNamara* v. *Leipzig*, 227 N. Y., 291, 125 N. E., 244; *Charles* v. *Barrett*, 233 N. Y., 127, 135 N. E., 199; *Standard Oil Co.* v. *Anderson*, 212 U. S., 215.

In the case at bar, although the road mechanic was rendering a service to the State of Vermont in attaching deflectors to its snow plows, in doing this he was working for the Maine Steel Products Co., which had agreed to furnish and attach them free of charge. When he collided with the plaintiff's truck, he was hauling a de-

flector to Hartland and going with it to put it on. At most, the officers of the Highway Department of Vermont had been permitted to specify what work was to be done and direct when and where it should be performed. There is no inference that the Maine Steel Products Co., by permitting this division of control over its mechanic, had surrendered or resigned "command" so as to relieve itself from liability for his acts while he was engaged in the very work it had entrusted to him and was attempting to accomplish it. *Charles* v. *Barrett*, supra.

Nor can the plaintiff be denied a recovery because the defendant's servant used a means of transporting its deflectors which it had not intended or contemplated. When the collision occurred, the road mechanic was using the truck not for his own purpose or those of the State of Vermont, but to perform a part of the service which he had been directed to render. This could properly be found to be within the scope of his employment. If so, his master is liable. *Champion* v. *Shaw*, 258 Mass., 154 N. E., 181; *39 C. J. Sec. 1478 and notes*.

It is the opinion of the Court that the jury committed no error in reaching the conclusion that Fred A. Pickering, who caused the plaintiff's injuries and property damage as here alleged, was acting as the defendant's servant or agent at the time. Its verdict in accordance with that finding can not be set aside.

EXCEPTIONS:

The defendant takes nothing by its exception to the refusal of the trial judge to grant its motion for a directed verdict. The questions there involved have been fully covered under the general motion for a new trial.

We are not of opinion that a new trial should be granted in this case because the plaintiff was allowed against objection to introduce evidence showing that, after this collision, the Maine Steel Products Co., paid its road mechanic compensation for disability under the Workmen's Compensation Act of the State of Maine. R. S., Chap. 55. Although this evidence should have been excluded as having no legitimate bearing upon the issue before the Court, it does not appear that the excepting party was aggrieved by it. It appears "that the case upon its merits has been rightly decided and

that the result should not be disturbed because of abstract errors of law, if they exist, which could not and do not interfere with the truth." *Gordon* v. *Conley*, 107 Me., 286, 78A., 365, 368. The exception directed to the admission of this evidence is not sustained.

*Motion and exceptions overruled.*