Hoke S. PURCELL, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 33547.

United States District Court,
N. D. California, S. D.

March 30, 1955.

Kretzmer & Landisman, Richmond, Cal., for plaintiff.

Lloyd H. Burke, U. S. Atty., Frederick J. Woelflen, Asst. U. S. Atty., San Francisco, Cal., for defendant.

HAMLIN, District Judge.

This is an action brought under the "Federal Tort Claims Act", 28 U.S.C.A. §§ 1346, 2671 et seq., for damages sustained by the plaintiff in a collision with an automobile being driven by an employee of the United States of America. It is undisputed that the accident occurred on the evening of September 2, 1953 on the Eastshore Highway north of Oakland and on the highway between Oakland and Sacramento. The plaintiff was driving an automobile in a northerly direction on said highway, stopped his car at an intersection because of traffic conditions, and while his car was so stopped, an automobile driven and owned by Major Gaughenbaugh of the United States Air Force ran into the rear of plaintiff's automobile.

The facts showed that Major Gaughenbaugh was stationed at Hamilton Air Force Base in California, located some 20 miles north of San Francisco in Marin County. He received written orders on September 2, 1953, to "proceed on or about 2 September 1953 from present station to Oakland and Sacramento, California, on temporary duty for approximately two days for the purpose of attending joint staff meeting of Commanders and Operations Officers of this organization * * *".[1]

Accordingly, Major Gaughenbaugh left Hamilton Base in the late afternoon of September 2 and proceeded to the Oakland Filter Center in Oakland. He arrived there about 6 or 7 P.M., stayed there a couple of hours attending to his duties and then left en route to Sacramento where there was scheduled a meeting the next morning at 9 A.M. It was while proceeding from Oakland toward Sacramento that the accident occurred.

---

1. The orders issued to Major Gaughenbaugh, in so far as they are pertinent here, read as follows:

"Headquarters 28th Air Division (Defense) (ADC)
"Hamilton AFB, Calif
"2 September 1953
"Letter Orders #320
"Subject: Temporary Duty Travel
"To: Personnel Concerned
* * * * * * *

"7. Following named Officers, United States Air Force, Headquarters 4772nd Ground Observer Squadron, Hamilton Air Force Base, California, will proceed on or about 2 September 1953 from present station to Oakland and Sacramento, California on temporary duty for approximately two (2) days for the purpose of attending joint Staff meeting of Commanders and Operations Officers of this organization. To coordinate administrative activities at Sacramento and participation in State Fair (Duty directed is being performed for unit issuing orders), upon completion of temporary duty return to proper station and destination.

"Major Paul O. Gaughenbaugh AO558866 (Aeronautical Rating: Pilot on Flying Status) Secret Clearance * * * *

"Government quarters and messing facilities will be utilized if available. Finance Department will forward one (1) copy of paid voucher to Budget and Fiscal Officer, 566th Air Defense Group, Hamilton Air Force Base, California. Travel by government automobile and or travel by military aircraft authorized and directed if available. Travel as directed is necessary in the military service. Authority is granted to make such changes in the above itinerary and to proceed to such additional places as may be necessary for the accomplishment of this mission."

As a result of said collision the plaintiff suffered certain injuries which will be set forth in more detail later. It is not disputed that Major Gaughenbaugh was negligent, but the defendant denies liability on the part of the United States of America upon the ground that at the time of the accident Major Gaughenbaugh was driving his own automobile and not acting within the course and scope of his employment so as to create liability on the part of the defendant as provided for in the Federal Tort Claims Act. The Federal Tort Claims Act provides in pertinent part:

"* * * the district courts * * * shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, * * * for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C.A. § 1346 (b), 62 Stat. 933, as amended.

"As used in * * * sections 1346(b) * * * of this title, the term—

"* * * 'Acting within the scope of his office or employment', in the case of a member of the military or naval forces of the United States, means acting in line of duty." 28 U.S.C.A. § 2671, 62 Stat. 982, as amended.

"The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances * * *." 28 U.S.C.A. § 2674, 62 Stat. 983, as amended.

The Supreme Court has stated that the language of the Act "indicates a congressional purpose that the United States be treated as if it were a private person in respect of torts committed by its employees". U. S. v. Aetna Casualty & Surety Co., 338 U.S. 366, 70 S.Ct. 207, 210, 94 L.Ed. 171. We are considering the statute as a broad waiver of immunity. U. S. v. Fotopulos, 9 Cir., 1950, 180 F.2d 631.

The defendant admits that if the Major's employer were a private person that the Major would have been acting within the scope of his employment at the time of the accident and that such an employer would be liable under California law as a principal for the torts of his agent. But the United States contends that as to military personnel, the Federal law and not the state law determines what acts are done within the scope of employment and in line of duty, citing Williams v. U. S., 9 Cir., 215 F.2d 800. The defendant then relies on the following cases arising under the Tort Claims Act in which it was held that the United States was not liable because the servicemen concerned were not acting in line of duty or in the scope of their employment: U. S. v. Eleazer, 4 Cir., 177 F.2d 914, certiorari denied 339 U.S. 903, 70 S.Ct. 517, 94 L. Ed. 1333; U. S. v. Sharpe, 4 Cir., 189 F.2d 239; Williams v. U. S., 9 Cir., 215 F.2d 800; Paly v. U. S., D.C.Md., 125 F.Supp. 798.

All of the cases relied on by the defendant are distinguishable from the case at bar. In the Eleazer and Sharpe cases, the military personnel involved were on a "leave status", while in the Williams case he was not engaged in furthering the business of the military. In the present case, the Major was not on leave and he was engaged in furthering the business of the military. The Paly case, however, requires further discussion because in that case the serviceman was not on leave and he was acting in the interests of his employer; but the orders under which he was acting directed him to accompany the body of a deceased member of the military forces and to attend his funeral, and authorized him to travel at his own expense subject to reimbursement. Normally, under these orders, a serviceman traveled with the

body in the mortician's vehicle when the body is delivered to the next of kin at the funeral home. But the facts of the Paly case showed that the particular serviceman there did not accompany the body inasmuch as he did not receive his orders until after the mortician had begun the trip to the funeral home where the body was to be delivered to the next of kin. He was en route to the funeral home to attend the funeral in compliance with the second part of his orders when the accident occurred. In holding that he was not acting in the scope of his employment, the Court emphasized that the evidence indicated that a private automobile had never been used before in carrying out such an assignment, and that the orders there in question did not impliedly authorize the use of a private automobile. The Court stated: "In the instant case there was no evidence that Stefan had ever previously used his own automobile for government business; and there is therefore no suggestion that his use of it in the particular case was induced by prior knowledge, approval or acquiescence of his superior officers." Paly v. U. S., supra, 125 F.Supp. at p. 807.

The evidence in the instant case shows that the Major had had many similar assignments of duty and that on each occasion he had used his private automobile, had turned in an expense account showing a mileage charge for the use of his automobile and that his expense accounts had been approved and paid by the United States. Thus, the use of a private automobile which the Major had made here had been approved and sanctioned by the past conduct of the United States, and the orders in question fairly implied and contemplated such use. Certainly it can be said that the Major was induced by this past sanction and approval to make use of his private automobile, and this element of implied authority for such use adequately serves to distinguish the Paly case from this case.

The case of Jozwiak v. U. S., D.C.Ohio, 123 F.Supp. 65, cited by defendant, is distinguishable on the same grounds.

There, the United States was held not liable for the acts of a civilian government employee who was driving his own private car. But there was nothing whatsoever to indicate a past approval of such a use of a private automobile. And, under Ohio law, he was not within the scope of his employment. Moreover, to any extent that the Jozwiak case applies here, it would seem to be in conflict with a case in this Circuit, Marquardt v. U. S., D.C. Cal., 115 F.Supp. 160.

Thus, even though it could be said that the Federal law holds that the power of control is an essential element of acts done within the scope of employment and in line of duty, none of the cases suggests that it is lacking in such a situation as we have here. He was not "on leave" but was actively carrying out orders; he was engaged in military business; and his use of a private automobile had been induced by the prior approval of the defendant. The fact that the time and details of the assignment were not set forth in the orders has not prevented liability where the serviceman was driving a government vehicle, Murphey v. U. S., 9 Cir., 179 F.2d 743; McConville v. U. S., 2 Cir., 197 F.2d 680; Marquardt v. U. S., supra; O'Connell v. U. S., D.C. Wash., 110 F.Supp. 612; Taylor v. U. S., D.C.Ky., 113 F.Supp. 920; or where a civilian employee was driving his own private automobile, U. S. v. Wibye, 9 Cir., 191 F.2d 181. The sole basis for the government's argument, therefore, is the fact that the Major here was driving his own private automobile. But, inasmuch as he was actively engaged in carrying out his assigned duties, it is difficult to see how the element of control is any the less present by virtue of the fact that he was driving his private automobile. No authority for a contrary view has been brought to my attention. It should be noted, too, that the element of control is satisfied according to the California rule which looks chiefly to control over the person and not necessarily to control over the instrumentality. Cook v. Sanger, 110 Cal.App. 90, 293 P. 794;

Curcic v. Nelson Display Co., 19 Cal.App. 2d 46, 64 P.2d 1153; and see 140 A.L.R. 1150.

■ The Major in the instant case was clearly *acting within the scope of employment and in line of military duty.* In the Paly case, relied on by defendant, it was expressly held that the serviceman was acting *in line of duty in going to* the funeral home where he was to actually perform his assigned duties. Similarly here, the Major was going to Sacramento in accordance with orders,—he was going at the time he was supposed to go, following the route he was supposed to follow, and using an instrumentality (his own automobile) that he had to the knowledge of his employer used on many similar occasions previously.

To say that at the time of the accident he was not acting within the scope of his employment and in line of military duty would be to place a strained and unrealistic construction and interpretation on the Federal Tort Claims Act, one which is not in keeping with the statement of the Supreme Court that "the language of the Act indicates a congressional purpose that the United States be treated as if it were a private person in respect of torts committed by its employees". U. S. v. Aetna Casualty & Surety Co., supra. Therefore, the Court holds, as it must hold, that Major Gaughenbaugh was acting in the scope of his employment and in line of duty within the meaning of the Act.

Since the Court is of the view that under both state law and Federal law, the Major was acting within the scope of employment and in line of duty, it is not necessary to discuss the question of whether state or Federal law is controlling on this issue.

An action was commenced by plaintiff against Major Gaughenbaugh individually in the Superior Court of the State of California in and for the County of Contra Costa on October 22, 1953. While that action was pending, the plaintiff learned of the facts surrounding Major Gaughenbaugh's activities as set out above, and thereafter filed this present action in this District Court with the United States as sole defendant. The state court action was dismissed without prejudice after the plaintiff received from the Major's insurer the sum of $1,-975, and executed the following instrument:

### "Indemnity Agreement

"For and in consideration of the sum of One Thousand Nine Hundred Seventy-five Dollars ($1,975.00) receipt whereof being hereby acknowledged, Hoke Smith Purcell and Estell Purcell, and each of them, agree to indemnify and save harmless Paul O. Gaughenbaugh, Armed Forces Insurance Underwriters, an agency of the Armed Forces Mutual Insurance Company, the Armed Forces Mutual Insurance Company, and the Acme Mutual Insurance Company of Bexar County, and each of them, against any and all liability, loss, damages, costs and expenses which the said Paul O. Gaughenbaugh or Armed Forces Insurance Underwriters, an agency of the Armed Forces Mutual Insurance Company, the Armed Forces Mutual Insurance Company, and the Acme Mutual Insurance Company of Bexar County, or either of them, may hereafter suffer, incur, be put to, pay, or lay out to the undersigned, or either of them, or to any other person, firm, corporation, or governmental agency by reason of, or having as their origin, claims for, *personal injuries or property damage,* or claims of any kind or nature whatsoever arising out of said injuries or damages, or either of them, sustained by *Hoke Smith Purcell and Estell Purcell* or either of them, in that certain accident or occurrence heretofore on or about the 2nd day of September, 1953, on Highway U. S. 40 near the intersection thereof with Columbia Avenue, in the County of Contra Costa, State of California.

"The undersigned, and each of them, further acknowledge that they have been independently advised by their counsel, Kretzmer & Landisman, prior to the execution of this agreement.

"Witness our hands and seals the 1st day of July, 1954, in Richmond, Contra Costa County, California.

/s/ Hoke Smith Purcell
Hoke Smith Purcell
/s/ Estelle Purcell
Estell Purcell"

The United States has taken the position that this document is a release which operates to bar the plaintiff from proceeding against the United States as a joint tortfeasor and that the dismissal of the action is a retraxit which likewise bars him from prosecuting this present action. The Court holds that it does not.

The plaintiff did not accept the payment in satisfaction or compromise of his claim, and he has never abandoned or relinquished his claim. Under California law, therefore, this instrument cannot be a release, and the defendant United States was not thereby released from liability. Pellett v. Sonotone Corp., 26 Cal. 2d 705, 160 P.2d 783, 160 A.L.R. 863; Burke v. W. R. Chamberlin & Co., 51 Cal. App.2d 419, 125 P.2d 120; Ellis v. Jewett Rhodes Motor Co., 29 Cal.App.2d 395, 84 P.2d 791. The dismissal was without prejudice and was not a renunciation of the claim. Therefore it cannot be a retraxit so as to bar this action. Lewis v. Johnson, 12 Cal.2d 558, 86 P.2d 99; Burke v. W. R. Chamberlin & Co., supra.

However, as plaintiff admits, he can have only one satisfaction for his claim, and the rule is that any sums received by him for his injuries must be applied to any recovery he obtains. Pacific States Lumber Co. v. Bargar, 9 Cir., 10 F.2d 335; Bolton v. Zeigler, D.C.Iowa, 111 F.Supp. 516, 532. Hence, any amount for damages found to be due him for the injuries he sustained will be reduced by the amount of $1,975 in entering the judgment.

As a result of the accident, plaintiff claimed to have suffered certain injuries in reference to his lower back. The evidence showed that for some years prior to the accident in question, the plaintiff had suffered from an unstable back. He had received some injury to it in 1947 and thereafter periodically he was required to get care and attention for his back, being hospitalized upon at least two occasions prior to March, 1953. At that time, his back having again given him considerable trouble, an operation was performed by Dr. Hurley to fuse the fifth lumbar vertebra and the first sacral vertebra. The patient was placed in a brace after the operation and returned to work the latter part of July, 1953. At the time of the present accident on September 2, 1953, the plaintiff was still wearing the brace. About a week after the present accident, the plaintiff consulted his doctor again, contending he had lower back pains; and about two weeks after the accident, complained of radiating pains into his legs. This situation continued intermittently until November, 1953, when the plaintiff was again hospitalized. In the first part of December, 1953, the plaintiff was again operated on by Dr. Hurley, at which time he found a protruded intervertebral disc and also found a crack in the fused vertebrae. The doctor was unable to say definitely whether this crack was due to trauma or to a false joint or non-union. He did, however, say he believed the protruded disc was the result of trauma. In the performance of the operation, he took care of the disc protrusion and also refused the vertebrae. Subsequent to the operation, the plaintiff had no radiating pain in his legs and gradually improved in the back condition. In April or May of 1954, the plaintiff developed some emotional disturbances, as a result of which Dr. Hurley suggested that he consult his minister concerning the problem. The minister was consulted on three occasions. Around that time the plaintiff took a vacation in Texas for a month, during which time he was symptom-free of any pain or difficulty. Thereafter,

888

however, the plaintiff again complained of pain in his back. Dr. Hurley testified that he thought at the time of the trial in January, 1955, that the defendant was recovered as far as his back was concerned to the same degree as he would have been if the accident of September 2 had not occurred.

In considering the amount of damages that should be awarded to plaintiff, the Court has considered among other things the general condition of the plaintiff prior to the accident in question, and has also considered the extent to which that condition has been aggravated by the happening of the accident complained of herein, together, of course, with the pain and suffering occasioned thereby.

■ It is ordered that plaintiff recover judgment against the defendant in the sum of $10,000 less the sum of $1,975 heretofore recovered by him, or $8,025.

Plaintiff will prepare findings of fact, conclusions of law and judgment in accordance herewith.