Theodore J. CHAPIN and Adam Sydlik, Appellants,

v.

UNITED STATES of America, Appellee.

No. 15511.

United States Court of Appeals Ninth Circuit.

June 30, 1958.

Rehearing Denied Oct. 17, 1958.

Greenbaum, Baker & Ancel, Los Angeles, Cal., Thomas Griffin, Long Beach, Cal., Richard A. Zabel, Los Angeles, Cal., for appellants.

Laughlin E. Waters, U. S. Atty., Max F. Deutz, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before STEPHENS, Chief Judge, and BARNES, Circuit Judge.

BARNES, Circuit Judge.

This is an appeal from a summary judgment in two consolidated actions brought against the United States in the District Court for the Southern District of California pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b).[1] The parties stipulated the facts concerning the issue of scope of employment, and the government obtained a summary judgment based thereon. This appeal followed.[2]

On April 4, 1956 one Herman H. Frehe, a private first class in the United States Army, was en route from Norton Air Force Base, California, to Ft. Hood, Texas, traveling in his own automobile, under competent orders transferring him to Ft. Hood on a permanent change of station. While so engaged Pfc. Frehe became involved in an accident, in California, with an automobile driven by appellant Sydlik in which appellant Chapin was a passenger. Frehe's orders directed him to proceed on or about April 4, 1956; authorized travel by private automobile, stating that such "travel directed is necessary in the military service;" provided for four days delay en route; and directed him to report for duty at Ft. Hood April 12, 1956. On these facts the District Court determined that at the time of the accident Frehe was not acting "within the scope of his * * * employment" and therefore there was no liability upon the part of the United States for his conduct. With the case in this posture there has been no trial on the issue of negligence, the court below having determined by summary judgment that it was without jurisdiction to grant relief against the United States.

Appellants complain of two errors: First, that it was improper to grant the motion for summary judgment because there exists a serious dispute over a material fact; second, that the court erred in determining that under the applicable

---

1. "Subject to the provisions of chapter 171 of this title, the district courts * * shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages * * * for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

2. 28 U.S.C. § 1291.

California law Frehe was not acting within the scope of his employment at the time of the accident.

## I. Summary Judgment

We are of the opinion that the District Court was correct in granting the government's motion for summary judgment. The disputed "fact" is whether Frehe was acting within the scope of his employment at the time the accident occurred. There may be situations involving deviation from or abandonment of an employer's business from which varying inferences may be drawn; there it is properly left to the trier of fact to determine whether the employee was or was not acting within the scope of his employment.[3] But here there are no inferences to be drawn. There is an agreed set of facts upon which the court below could rightly conclude as a matter of law the issue of scope of employment.

The issue before this Court is, therefore, whether a member of the armed services of the United States is within the scope of his employment, under the applicable California law, when traveling by private automobile on a permanent change of station pursuant to competent orders authorizing travel in this manner and providing reimbursement of expenses incurred in the course of such travel.

## II. Scope of Employment

■ We are controlled by the California law and the issue squarely presented is whether her courts would hold that Frehe was acting within the scope of his employment at the time of the accident. Williams v. United States, 1955, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761, vacating Williams v. United States, 9 Cir., 1954, 215 F.2d 800.

■ The common law doctrine of *respondeat superior* has been made a part of the statutory law of California. Cal. Civ.Code § 2338.[4] Her courts have developed numerous tests, applicable in varying situations, designed to provide guides to determine whether an employee's conduct falls within the ambit of section 2338. They are accurately stated in 32 Cal.Jur.2d, Master & Servant § 117:

> "The scope of employment depends on a consideration of what the servant was doing and of why, when, where, and how he was doing it. The factors to be considered include intent of the employee, the nature, time, and place of his conduct, his actual and implied authority, *the work he was hired to do,* incidental acts the employer should reasonably have expected would be done, and amount of freedom allowed the employee in performing his duties. * * * *In the last analysis, each case must be determined on its own peculiar facts and circumstances,* together with the character of the employment and the nature of the wrongful act."
> [Emphasis added.]

But no single relevant factor is necessarily controlling. "[T]he results reached in other decisions are helpful but not necessarily controlling. * * * In each case involving scope of employment all of the relevant circumstances must be considered and weighed in relation to one another." Loper v. Morrison, 1944, 23 Cal.2d 600, 605, 145 P.2d 1, 3.

The general rules just stated are derived from the many hundreds of California decisions which have considered the problem of scope of employment—a status or relationship easily labeled but exceedingly difficult of definition and analysis. In order to apply these rules correctly, it is essential that the factual contexts out of which they have arisen be considered. And in this regard we

---

3. Loper v. Morrison, 1944, 23 Cal.2d 600, 145 P.2d 1.

4. "Unless required by or under the authority of law to employ that particular agent, a principal is responsible to third persons for the negligence of his agent in the transaction of the business of the agency, including wrongful acts committed by such agent in and as a part of the transaction of such business, and for [the] willful omission to fulfill the obligations of the principal."

are of the opinion that the decisions involving employer liability to third persons for the negligent conduct of an employee engaged in a permanent change of place of employment—transfer cases —are the decisions most relevant and which must ultimately control the instant case.[5]

We must decide whether the peculiar status of a member of the armed services has any effect on the validity of the general rules already noted; or whether, for the purposes of *respondeat superior*, his status is to be considered similar to that of any private employee. We discern no basis in the statute waiving sovereign immunity nor in logic for making a distinction which would extend the scope and application of the doctrine of *respondeat superior* beyond that traditionally applied to private employers simply because the federal government in its military capacity finds itself in the role of employer.[6]

The exclusive jurisdiction conferred on the federal district courts by 28 U.S. C. § 1346 precludes the courts of any state from ever passing upon this exact phase of the problem of scope of employment, and thereby deciding what is essentially a matter of state policy.[7] Other federal courts, in transfer cases, under the applicable state law, have faced this issue and have failed to draw a distinction based upon the unique relationship of a soldier to his employer.[8] We are unable to find any significant differences in the California law of *respondeat superior* in this respect and therefore conclude that no such distinction is properly made in the instant case.

The question thus posed is whether an *employer* is liable for the negligent conduct of an employee during the period of travel from his former place of employment at which his duties have been terminated to a new place of employment at which his duties have not yet commenced. Certainly this situation is entirely unlike those in which the employee's duties require continual travel.[9] It is also dissimilar to those cases involving the so-called "special errand" rule.[10]

5. Appellants premise the bulk of their arguments upon the non-transfer cases cited at notes 9 and 10, infra.

6. But see 28 U.S.C. § 2671, defining "Employee of the government."

7. It is altogether possible that the state courts will be called upon to determine the analogous problem of traveling state government employees, but the peculiar military status here involved will probably never be before them.

Once before this same problem was before the Court, but we were then not compelled to pass on it. In United States v. Kennedy, 9 Cir., 1956, 230 F.2d 674, the factual elements were indistinguishable from the case at bar. However, the issue of scope of employment was conceded by the government and it clearly appears from the reported decision that it was given no consideration by this Court. "Since the appellant admits * * scope of his employment * * * " etc. (at page 675.) Similarly, in Marquardt v. United States, D.C.S.D.Cal.1953, 115 F. Supp. 160, scope of employment was assumed in a "transferred government employee" case. The only issue there decided was whether combining personal business with the "business" of his employer was sufficient to remove the employee's conduct from the scope of his employment.

8. United States v. Sharpe, 4 Cir., 1951, 189 F.2d 239; United States v. Eleazer, 4 Cir., 1949, 177 F.2d 914; Noe v. United States, D.C.E.D.Tenn.1956, 136 F.Supp. 639; cf. Jozwiak v. United States, D.C. S.D.Ohio1954, 123 F.Supp. 65.

9. E. g., United States v. Wibye, 9 Cir., 1951, 191 F.2d 181; Loper v. Morrison, 1944, 23 Cal.2d 600, 145 P.2d 1; Ryan v. Farrell, 1929, 208 Cal. 200, 280 P. 945; Cook v. Sanger, 1930, 110 Cal.App. 90, 293 P. 794; compare Marquardt v. United States, D.C.S.D.Cal.1953, 115 F. Supp. 160.

10. E. g., Purcell v. United States, D.C. N.D.Cal.1955, 130 F.Supp. 882; Vind v. Asamblea Apostolica, Christo Jesus, 1957, 148 Cal.App.2d 597, 307 P.2d 85; Boynton v. McKales, 1956, 139 Cal.App. 2d 777, 294 P.2d 733; Loos v. Boston Shoes, 1954, 123 Cal.App.2d 564, 266 P.2d 884; Dolinar v. Pedone, 1944, 63 Cal.App.2d 169, 146 P.2d 237; Barton v. McDermott, 1930, 108 Cal.App. 372, 291 P. 591.

We do not consider those cases helpful or controlling.[11]

In our view the recent case of McVicar v. Union Oil Co., 1956, 138 Cal.App.2d 370, 292 P.2d 48, establishes the governing criteria by which to determine the scope of employment status of transferring employees.[12] In the McVicar case an employee of United Airlines was transferred from the United facilities at San Francisco to those at Spokane, Washington. En route he was involved in an automobile accident. The employee was paid at an hourly rate, therefore he was not being paid for the time spent traveling; additionally, he was traveling on his days off. However, he was at all times an employee of United and carried as such on their payroll records. He was not reimbursed for the expense of travel, nor did or could his employer specify any particular mode of transportation; however, there was evidence that the employee could have utilized his employer's transportation services without cost to himself. The First District Court of Appeal held that the employee was not acting within the scope of his employment during the time he was traveling from San Francisco to Spokane pursuant to the transfer. The court reasoned that

"the employer had no right to control or direct [the employee] as to the time, route, mode of transportation or any feature of his going from San Francisco to Spokane. He could have gone in an airplane of his employer free of charge. He could have gone by bus, train, motorcycle, automobile or have flown his own private airplane if he had one. He could start when he pleased, stop when he pleased and go by any route that he pleased so long as he arrived in Spokane in time to report for work on December 1. His employer not only had no right to direct him to go by any particular means of transportation but also no right to forbid him to do so. He could have driven a car with faulty or no brakes and his employer had no right to interfere. To put the test of the cited case, if instructions were given they would not have to be obeyed." Id., 138 Cal.App.2d at page 373, 292 P.2d at page 50.

The opinion then goes on to cite as "a case nearly in point" United States v. Sharpe, 4 Cir., 1951, 189 F.2d 239. Sharpe involved a soldier traveling under orders to report at a date certain, but without any allowance for expenses. The essence of the Sharpe case is that while traveling by self-selected means with competent orders concerned only with the ultimate reporting date, a soldier is not acting within the scope of his employment in the sense required for application of the doctrine of *respondeat superior*.

We conclude the basis of the McVicar case to be that the act of travel by the employee is not one subject to the employer's control as a part of the duties the employee was hired to perform. Similarly, the act of a soldier's travel on a permanent change of station is not a

11. See Vind v. Asamblea Apostolica, Christo Jesus, 1957, 148 Cal.App.2d 597, 307 P.2d 85, indicating the validity of a distinction based on the "transfer" cases.

12. Gaytan Engineering Co. v. Industrial Acc. Com., 1950, 95 Cal.App.2d 740, 213 P.2d 737, is also a "transfer" case. There death benefits under the Workmen's Compensation Act were awarded where death of the employee occurred while traveling to his new place of employment. It may be that this case is more correctly classified as one involving continual travel. See cases cited at note 9 supra. Assuming it to be a true "transfer" case, we do not consider it relevant here. Among other distinguishing features, it is apparent that the transfer was especially beneficial to the employer in that available labor to perform his services was in extremely short supply. Additionally, it appears from the opinion that the employee's truck, which he was driving at the time of the accident, was also of special utility to the employer. These factors are missing from the instant case as well as from McVicar v. Union Oil Co., 1956, 138 Cal. App.2d 370, 292 P.2d 48, and are sufficient to distinguish the Gaytan decision.

part of the duties for which he is engaged. It is conduct the control of which is beyond the terms of the employment relationship.

Appellants argue the McVicar case is inapposite because the army, so say appellants, could have prohibited Pfc. Frehe from traveling by private automobile and could have directed that he travel by some other specific mode of transportation. This argument is not sufficient to support a conclusion that Frehe was acting within the scope of his employment at the time of the accident. The ability to control must arise out of the employment relationship.[13] The government's ability to control Pfc. Frehe's movement arose not out of its status as an employer, but by virtue of its military capacity. In our view the necessary element of control relates to the particular functions for which the employee was hired and cannot be supplied by the unique military status. The soldier's obligation to hold himself ready for instant obedience to the commands of his superiors is the concern only of the army and the soldier; this unique obligation is totally unrelated to any conduct affecting these appellants or others similarly situated. *As an employer,* the army could not direct the manner in which Frehe drove his car or its mechanical fitness for the trip.[14] The Joint Travel Regulations[15] cited by appellants neither compel nor prohibit travel in a particular manner or by a particular mode. They provide nothing more than a basis for reimbursement of expenses incurred, if the directives issued thereunder are followed. Thus the authorization to travel by private automobile was not an order and need not have been followed. The army's only concern was that Frehe report for duty at Ft. Hood on April 12, 1956.[16] The mode and manner of travel was purely of his own choosing and for his own benefit. Under these circumstances we can see no basis in the California decisions which compel a conclusion that the act of travel by Pfc. Frehe was within the scope of his employment so as to create liability upon the part of the government to third parties injured by Frehe's conduct.

Within limitations similar to those of the Erie[17] doctrine, we must analyze all relevant factors to determine the course of action the highest state court would take, were it squarely presented with the issue.[18] The distinction approved in Jozwiak v. United States, D.C. S.D.Ohio 1954, 123 F.Supp. 65, at page 69, accurately states the California law as we view it:

"There is a clear distinction between acts done within the scope of employment and acts done merely during the employment."

Pfc. Frehe's duties were to be performed at his post.[19] At the time of the accident his duties had terminated at Norton Air Force Base and had not yet begun at Ft. Hood. Unless a soldier is to be considered peculiarly different from other employees of the government for the purposes of *respondeat superior,* the activity of traveling between permanent duty stations is "merely during

---

13. See Carr v. Wm. C. Crowell Co., 1946, 28 Cal.2d 652, 171 P.2d 5, involving an intentional tort by an employee arising out of the performance of the duties for which he was employed.

14. To this limited extent Finding XIV to the contrary is erroneous.

15. 10 U.S.C. § 1363, now 10 U.S.C. §§ 4741, 9741, places the transportation of troops under the immediate supervision and control of the Secretary of the Army. 37 U.S.C.A. § 253 authorizes travel pay and allowances pursuant to uniform regulations issued by the armed services.

Sections 4150 et seq. of the Joint Travel Regulations are the provisions here pertinent.

16. The subsequent revocation and re-issue of Pfc. Frehe's travel orders has no material bearing upon our decision.

17. Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

18. Bernhardt v. Polygraphic Co., 1956, 350 U.S. 198, 205, 76 S.Ct. 273, 100 L. Ed. 199; 45 Calif.L.Rev. 87 (1957).

19. Compare Purcell v. United States, D.C. N.D.Cal.1955, 130 F.Supp. 882.

employment" and not within the scope of employment. As already indicated, we have found no reasonable basis in California law for such a distinction.

The decision of the District Court is affirmed.

(LEMMON, Circuit Judge, heard this case, but died before decision. The matter, therefore, has been decided by the other two members of the panel.)