James Joseph O'BRIEN, and Marion R. O'Brien, and Kevin O'Brien, by Father and Next Friend, James Joseph O'Brien, and Al Orr, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. No. 1467.

United States District Court
D. Maine, N. D.

Dec. 30, 1964.

Edward Stern, Bangor, Me., for plaintiff.

David G. Roberts, Asst. U. S. Atty., Bangor, Me., for defendant.

GIGNOUX, District Judge.

This is an action under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 and 2674, to recover damages arising out of an automobile accident which occurred on October 14, 1963, in Aurora, Maine, between plaintiffs' car and a car owned and driven by Jackie C. Kisor, an Airman First Class in the United States Air Force. The parties have stipulated that the only liability issue is whether or not Kisor at the time of the accident was "acting within the scope of his * * * employment" within the meaning of the Federal Tort Claims Act,

so that defendant was legally liable for his negligence.[1] They have further agreed that this issue be determined by the Court in advance of any trial on the question of damages.

There is no dispute as to the relevant facts. On August 28, 1963, Airman Kisor, a personnel clerk, who had been stationed with his family at Harmon Air Force Base, Newfoundland, received orders changing his permanent duty assignment to Walker Air Force Base, New Mexico. Kisor's orders authorized him to travel in his own automobile; provided for 13 days' travel time; granted him 30 days delay en route, chargeable to leave; and directed him to report for duty at Walker Air Force Base not later than November 28, 1963. His orders further stated that the travel directed was necessary in the military service; provided that if he used his own automobile he was to be reimbursed for his travel expenses at the rate of 6¢ per mile; and granted him one month's rental allowance to help meet the expenses incurred in the change of station.

Kisor left Harmon Air Force Base on October 12, 1963, driving his own automobile and accompanied by his family. The accident occurred two days later while he was passing through Aurora, Maine. Although at the time of the accident he was on the direct route from Harmon Air Force Base to Walker Air Force Base, he was planning to take his wife, who was pregnant, to Milwaukee, Wisconsin, to stay at her parents' home,

---

1. 28 U.S.C. § 1346(b) provides in pertinent part: "[T]he district courts * * * shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, * * * for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

28 U.S.C. § 2671 provides in part: "'Acting within the scope of his office or employment', in the case of a member of the military or naval forces of the United States, means acting in line of duty." It has been held that the phrase "line of duty" as used in this statute is the equivalent of "scope of employment." Cooner v. United States, 276 F.2d 220, 222, n. 1 (4th Cir. 1960); United States v. Campbell, 172 F.2d 500 (5th Cir.), cert. denied, 337 U.S. 957, 69 S.Ct. 1532, 93 L.Ed. 1757 (1949); King v. United States, 178 F.2d 320 (5th Cir. 1949), cert. denied, 339 U.S. 964, 70 S.Ct. 998, 94 L.Ed. 1373 (1950).

because her doctor had told her not to travel after November 1st. Aurora, Maine, is also on the direct route from Harmon Air Force Base to Milwaukee.

The parties agree that, as the accident happened in Maine, the law of Maine controls in determining whether Kisor was acting within the scope of his employment. Williams v. United States, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955).[2] They also agree that there is no Maine case directly in point, as is to be expected because of the unique relationship between the Government and its military personnel and the fact that the Federal Tort Claims Act requires all suits such as this one to be brought in a federal court. 28 U.S.C. § 1346(b), supra, n. 1. Nor has the research of counsel and the Court disclosed any Maine case involving the analogous question of the liability of a private employer for the negligence of an employee while travelling from one permanent place of employment to another.

Both parties attempt to draw support from cases decided by federal courts throughout the country arising from accidents involving servicemen travelling by privately owned automobile between permanent duty stations. These cases, however, are of little help, both because of the different factual situations presented and because they have applied the law of other states or, in some instances before Williams v. United States, supra, federal law. Furthermore, they are conflicting. Generally, these cases have imposed liability upon the Government when the serviceman at the time of the accident was in travel status proceeding directly from his former to his new duty station. Cooner v. United States, 276 F.2d 220 (4th Cir. 1960); Hinson v. United States, 257 F.2d 178 (5th Cir. 1958); United States v. Mraz, 255 F.2d 115 (10th Cir. 1958); cf. Sample v. United States, 178 F.Supp. 259 (D.C.Minn. 1959); Satterwhite v. Bocelato, 130 F. Supp. 825 (E.D.N.C.1955); Purcell v. United States, 130 F.Supp. 882 (N.D. Cal.1955); Whittenberg v. United States, 148 F.Supp. 353 (S.D.Tex.1956) (civilian employee). Under similar conditions, however, other courts have reached the opposite conclusion. Chapin v. United States, 258 F.2d 465 (9th Cir. 1958), cert. denied, 359 U.S. 924, 79 S.Ct. 607, 3 L.Ed.2d 627 (1959); United States v. Sharpe, 189 F.2d 239 (4th Cir. 1951); cf. Jozwiak v. United States, 123 F.Supp. 65 (S.D.Ohio 1954) (civilian employee). On the other hand, in most cases the courts have refused to hold the Government liable when the accident occurred while the serviceman was on leave or in delay en route status. United States v. Eleazer, 177 F. 2d 914 (4th Cir. 1949), cert. denied, 339 U.S. 903, 70 S.Ct. 517, 94 L.Ed. 1333 (1950); Noe v. United States, 136 F. Supp. 639 (E.D.Tenn.1956); cf. Kunkler v. United States, 295 F.2d 370 (5th Cir. 1961) (deviation). To the contrary, however, is United States v. Kennedy, 230 F.2d 674 (9th Cir. 1956);[3] cf. Mar-

2. On the other hand, the fact of employment is determined by federal law. Pattno v. United States, 311 F.2d 604 (10th Cir. 1962), cert. denied, 373 U.S. 911, 83 S.Ct. 1300, 10 L.Ed.2d 412 (1963). The Government does not here question Kisor's status as its employee at the time of the accident.

3. It is unclear whether the court in United States v. Kennedy, supra, decided the scope of employment issue. On the one hand, the court stated, "The Government contends that under the Washington law of *respondeat superior* * * * the District Court erred in holding it responsible for this negligence of one of its soldiers." Id. 230 F.2d at 674. On the other hand, the court said, "[T]he appellant [the Government] admits that at the time of the accident Sergeant Mayer 'was acting within the scope of his employment as a member of the military forces of the United States' * * *" Id. at 675. And in Chapin v. United States, supra, 258 F.2d at 468, n. 7, a different panel of the same court stated, "In United States v. Kennedy * * * the issue of scope of employment was conceded by the government and it clearly appears from the reported decision that it was given no consideration by this Court."

quardt v. United States, 115 F.Supp. 160 (S.D.Cal.1953) (civilian employee). Because of the different facts involved and the differences in the laws of the several states in which they have arisen, no good purpose will be served by further discussion of these federal cases. This case must be decided upon its own facts and is governed by Maine law.

Since there is no Maine case directly in point, this Court must determine whether on the facts presented the Supreme Judicial Court of Maine would hold that Kisor was acting within the scope of his employment at the time of the accident, so that the Government was liable for his negligence under the doctrine of *respondeat superior*. Defendant strenuously urges that the Maine court would not impose liability on these facts because the Government was indifferent to the route and method of travel Kisor chose and exercised no control over the details of his driving; and because Kisor's use of his own automobile to transport him and his family to his new duty station was entirely for his own convenience and served no governmental purpose. The Court cannot agree. As this Court reads the decided Maine cases involving application of the doctrine of *respondeat superior* in comparable circumstances, they require a holding that the Government is liable for Kisor's negligence under the facts of this case.

Whatever the law may be in other jurisdictions, the Maine case of Frenyea v. Maine Steel Prods. Co., 132 Me. 271, 170 A. 515 (1934) makes clear that under Maine law control over the manner or means of performing the particular task in which the servant is engaged is not decisive to the master's liability for the servant's negligence if what the servant is doing is in furtherance of the master's business. In the Frenyea case a mechanic employed by the defendant in its plant at South Portland, Maine, had been sent to Vermont to assist in the installation of deflectors upon snowplows which had been sold by the defendant to the State of Vermont. The Vermont Highway Department loaned the mechanic a Ford truck for his use in this work. There was no evidence that the defendant was even aware that its mechanic was driving a truck or that it exercised any control over his operation of it. While driving the truck to a town in which he was to attach a deflector, the mechanic was involved in an automobile accident. On these facts the court held that the jury committed no error in reaching the conclusion that the mechanic was acting within the scope of his employment by the defendant at the time of the accident. It said,

"Nor can the plaintiff be denied a recovery because the defendant's servant used a means of transporting its deflectors which it had not intended or contemplated. When the collision occurred, the road mechanic was using the truck not for his own purpose or those [sic] of the state of Vermont, but to perform a part of the service which he had been directed to render. This could properly be found to be within the scope of his employment. If so, his master is liable." (Citations omitted.) Id. at 276, 170 A. at 517.

In so holding, the Maine court was reaffirming the strong dictum in the earlier case of Maddox v. Brown, 71 Me. 432 (1880), in which it stated,

"The master is liable to third persons for all damages resulting from the negligence of his servants, acting under his orders, or in the course of his business. Specific directions are not required. It is sufficient if the act was one within the range of the servant's employment. The general rule, as judicially declared in England, is that the master is answerable for every wrong of his servant committed in the course of the service and for the master's benefit, though no express command or privity of the master be proved." (Citations omitted.) Id. at 433.

It is evident from the Frenyea case that under Maine law lack of control by the master over the details of the

servant's driving is immaterial to the application of the doctrine of *respondeat superior;* under Maine law it is sufficient if the servant is engaged at the time in serving a purpose of the master.[4] But even if Maine law did require a showing that the details of the servant's driving are subject to the master's control, the necessary element of control is present in this case. It is the right to control, not the exercise of it, that is important for the application of the doctrine of *respondeat superior.* Seavey, Law of Agency § 84, at 142 (1964); cf. Kirk v. Yarmouth Lime Co., 137 Me. 73, 76–77, 15 A.2d 184 (1940); Murray's Case, 130 Me. 181, 185, 187, 154 A. 352, 75 A.L.R. 720 (1931); Mitchell's Case, 121 Me. 455, 461, 118 A. 287, 33 A.L.R. 1447 (1922); Restatement (Second), Agency §§ 14 and 220 (1958). Kisor's orders and the regulations referred to therein leave no doubt that he remained at all times accountable to the Air Force for all of his actions, including the driving of his private automobile. Whether Kisor was on travel or leave status, the Air Force had to be able to reach him through the address shown in his orders;[5] he might be ordered to temporary duty at any time;[6] and he was required at all times to conform to "standards of conduct, appearance, and safety expected of members of the Air Force."[7] He was, moreover, subject to the Uniform Code of Military Justice, 10 U.S.C. § 911, which provides, "Any person subject to this chapter who operates any vehicle while drunk, or in a reckless or wanton manner, shall be punished as a court-martial may direct." In sum, even though the Air Force may have been, as the Government urges, wholly indifferent to the route or mode of travel selected, there can be no question of its power and right to control all of Kisor's actions, including his driving activities, if

it so desired. The Court cannot accept the view urged upon it by defendant that because the Government's ability to control Kisor's movements arose by virtue of its military capacity, rather than out of its status as an employer, Kisor was not acting within the scope of his employment within the meaning of the Federal Tort Claims Act. In the case of a member of the armed forces this Act specifically equates "acting in line of duty" with "acting within the scope of his office or employment." 28 U.S.C. § 2671, supra, n. 1. In this Court's view, this language of the statute plainly indicates that when Congress enacted the Federal Tort Claims Act, it had in mind the special relationship between a serviceman and the military and chose not to differentiate between the Government's liability for the torts of its military personnel and its liability for the torts of its civilian employees. Hinson v. United States, supra, 257 F.2d at 181; Cooner v. United States, supra, 276 F.2d at 228. Contra, Chapin v. United States, supra, 258 F.2d at 470; Cooner v. United States, supra, 276 F.2d at 243–244 (dissenting opinion).

■■ There remains for consideration only defendant's contention that in driving his own automobile Kisor was serving his own interests and not those of the Government. It cannot be doubted that Kisor's use of his car to transport him and his family to his new duty station enabled him to serve a personal purpose. However, it is also clear that a governmental purpose created the necessity for his trip and that in making the trip Kisor was furthering the Government's business. At the time of the accident Kisor was on the direct route between stations; and while he was planning later to take his wife to her home in Milwaukee before completing the trip to New Mexico, he had not yet deviated

---

4. Frenyea also shows that under Maine law ownership of the automobile is not determinative when it is being operated by the servant in the master's business. Cf. Kirk v. Yarmouth Lime Co., 137 Me. 73, 15 A.2d 184 (1940); Mitchell's Case, 130 Me. 516, 154 A. 184 (1931);

Dobson's Case, 124 Me. 305, 128 A. 401, 42 A.L.R. 603 (1925).

5. Air Force Manual 35–22, dated 1 September 1949, para. 47, p. 25.

6. Ibid., para. 13.

7. Ibid., para. 47, p. 26.

from the direct route which his orders contemplated. As he passed through Aurora, Maine, he was thus serving at the same time both his own and the Government's purposes. Under these circumstances the issue is whether under Maine law a servant who is combining his own business with that of his master is acting within the scope of his employment so that the master is responsible for his negligence. In Stevens v. Frost, 140 Me. 1, 13–14, 32 A.2d 164, 170 (1943), the Maine court answered this question affirmatively as follows:

"As to the cases cited, to the effect that an employee may be in the course of his employment while also acting for his own interests, we accept that principle without question, and it applies whether the employee's interest is in the nature of business or pleasure. The principle is too well established to require citation of authority."

In this respect the Maine law is in accord with the law elsewhere. In the words of the Restatement, "The fact that the predominant motive of the servant is to benefit himself or a third person does not prevent the act from being within the scope of employment." Restatement, op. cit. supra, § 236, Comment b (1958). Professor Seavey's formulation is that the act is within the scope of employment if "the principal's interests are a substantial factor." Seavey, op. cit. supra § 87, at 151. It is plain that the United States' interests were a substantial factor in explaining Kisor's presence in Maine at the time of the accident.

For the reasons stated, the Court concludes that under the applicable Maine law Kisor was acting within the scope of his employment at the time of the accident, so that the Government was legally liable for his negligence. In the view of this Court, the Maine court would not hesitate to apply to the facts of this case the principles declared in the decided cases which have been discussed, for the frequency with which the military services place their employees on the high-ways makes this case one in which it is peculiarly "just that the loss resulting from the servant's acts should be considered as one of the normal risks to be borne by the business in which the servant is employed." Restatement, op. cit. supra § 229, Comment a, at 507.

In accordance with the stipulation of the parties, judgment will be entered for plaintiffs against defendant in an amount to be determined after a hearing on the issue of damages.