Erlon ROSE, as personal representative of the Estate of Jeffrey Rose, and

Cynthia Rose, individually and as mother and next friend of Jeffrey Rose, Plaintiffs,

v.

RYDER TRUCK RENTAL, INC., Timothy D. Lay, Michael Weinman, Willard D. Fountain, and the Morris Weinman Co., Defendants.

Civ. No. 86–0180 P.

United States District Court, D. Maine.

Decided June 10, 1987.

See also 649 F.Supp. 32.

Paul R. Dumas, Jr., Cloutier Joyce Dumas & David, P.A., Rumford, Me., for plaintiffs.

Christopher C. Dinan, Thomas F. Monaghan, Portland, Me., for defendant Lay.

Paul S. Douglass, Platz & Thompson, Lewiston, Me., for Willard D. Fountain.

James M. Bowie, Hunt, Thompson & Bowie, Portland, Me., for M. Weinman.

Richard D. Hewes, Portland, Me., for Ryder Truck Rental, Inc.

John B. Cole, Auburn, Me., for Timothy Lay.

GENE CARTER, District Judge.

## MEMORANDUM OF DECISION AND ORDER ON DEFENDANT THE MORRIS WEINMAN COMPANY'S MOTION TO DISMISS

This case is before the Court on the motion of Defendant The Morris Weinman Company (hereinafter "Company") to dismiss for want of personal jurisdiction. For the reasons stated herein, the motion will be granted.

Plaintiffs appear to assert that this Court may exercise personal jurisdiction over Company pursuant to a subsection of Maine's long-arm statute that authorizes jurisdiction over a person "[d]oing or causing a tortious act to be done" within Maine. Me.Rev.Stat.Ann. tit. 14, § 704–A(2)(B) (1964). The alleged tortious acts were committed by a Company employee, Defendant Timothy Lay. Therefore, in order to obtain jurisdiction over Company, Plaintiffs must show that Company did or caused these acts to be done by Lay. The parties agree that in order to make the showing, Plaintiffs must establish that at the time of the acts in question Lay was acting within the scope of his employment by Company. In other words, the parties agree that for purposes of Maine's long-arm statute, all acts by employees within the scope of em-

ployment are done or caused to be done by the employer.

The Court is not entirely comfortable with the equation of these two issues. The scope-of-employment test was developed in large part in the context of the doctrine of *respondeat superior.* That doctrine, holding employers vicariously liable for the torts of their employees committed within the scope of the employment, depends not only on the notion than an employer "causes" the torts of his or her employee but also on policy goals such as spreading losses and insuring that victims are not left uncompensated when employee tortfeasors are judgment-proof. Thus the scope-of-employment question may be broader than the question of causation. Alternatively, if indeed an employer can be said to do or cause to be done all acts by employees that are within the scope of employment, that degree of causation may be more attenuated than the causation required to establish jurisdiction under the long-arm statute. In short, there may be some acts that are within the scope of employment for purposes of *respondeat superior* yet are not done or caused to be done by the employer for purposes of the long-arm statute. However, the Court need not decide the question because, as explained more fully below, the Court finds that Lay was not acting within the scope of his employment at the time of the acts in question. *A fortiori,* Company did not do or cause these acts to be done.[1]

The Court finds the facts relating to the scope-of-employment question to be as follows. Lay was employed by Company to perform maintenance work at one of Company's properties in Maryland from 8:00 a.m. to 4:30 p.m., Monday through Friday. He was paid on an hourly basis for this approximately forty-hour week. Occasionally, Company vice president Michael Weinman asked him to perform maintenance services at other Company properties; when this required him to work outside of his normal working hours, his Company paycheck was adjusted accordingly.

In December of 1984, Weinman asked if Lay would be willing to drive a truckload of furniture from Maryland to a house in Camden, Maine belonging to Weinman and his mother and sister. Lay agreed to do so. Initially it was understood that Lay and his wife would stay on in Maine for a week as Weinman's guests. Although this plan was abandoned, Lay and his wife still were invited to stay the weekend as Weinman's guests, and Lay did not ask for any compensation, trusting that Weinman would "take care of" him in one fashion or another.

On the day before the move, a Thursday, Lay picked up his paycheck, which covered the usual forty-hour week. Weinman also gave Lay two hundred dollars in cash for expenses, Weinman's personal credit card, directions to the house in Maine, and a list of people to call once he reached Maine or if he had trouble along the way. The next day, Friday, Lay picked up the truck, which Weinman had had rented using personal funds, and with the help of Weinman's son picked up furniture at various points in Maryland. Lay left for Maine at about 3:00 p.m.; his wife followed in Weinman's car, which she was to bring to Maine for Weinman's use. The next day, a Saturday, while in Maine and following Weinman's written directions to the house in Camden, Lay and the truck were involved in an accident that is the subject of this action.

■ Lay's conduct at the time of the accident was within the scope of his employment by Company "if, but only if: (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; [and] (c) it is activated, at least in part, by a purpose to serve the master...." *Restatement (Second) of Agency* § 228(1) (1957). None of these three requirements is met in the in-

---

1. The issue could also be framed in terms of whether Company vice president Michael Weinman, when he arranged with Lay to make the trip to Maine, was acting in his personal or representative capacity. Or it could be framed in terms of whether Michael Weinman was act-

ing within the scope of his employment by Company. The Court concludes that on the facts as found herein, the same result would obtain under either of these alternative analyses as is reached through analyzing the scope of Lay's employment.

stant case. First, Lay was employed by Company to perform maintenance services at its Maryland investment properties, not to move truckloads of furniture to Maine. Second, the majority of Lay's conduct in effecting the move occurred outside of normal working hours and well beyond the normal spatial limits of his employment; the alleged tortious conduct occurred hundreds of miles from his usual place of employment or from any Company property. Third, Lay's conduct was in no way activated by a purpose to serve Company; it is undisputed that the move of Weinman's personal property to Weinman's personal vacation residence in Maine served only Weinman's interests rather than those of Company.

The Court sees little significance in the fact that Lay was paid by Company for the Friday on which the move began. Payment may help demonstrate that Lay was Company's employee during working hours on that Friday, but does not establish that any and all of Lay's actions on that Friday, let alone the unpaid Saturday on which the accident occurred, were within the scope of employment. The Court also notes that on past occasions when Lay performed Company maintenance work outside of normal working hours, this was reflected in his Company paycheck. Here, in contrast, Company neither promised to pay nor paid Lay for the time he spent on the move outside of normal working hours.

Under Maine law, the degree of control exercised by the employer is immaterial to the scope-of-employment inquiry if, at the time in question, the employee was serving a purpose of the employer. *See O'Brien v. United States*, 236 F.Supp. 792, 795–96 (D.Me.1964); *Frenyea v. Maine Steel Prods. Co.*, 132 Me. 271, 170 A. 515 (1934). If control were relevant, the inquiry would focus on the right to control rather than the exercise of control. *O'Brien*, 236 F.Supp. at 796. Here, it is clear that at the time in question, Weinman had a greater right to control Lay's conduct than did Company.

Plaintiffs finally argue that Company is collaterally estopped to relitigate the scope-of-employment question, because a Maryland workers' compensation decree has awarded Lay benefits growing out of the accident in Maine. Necessary to this decree, Plaintiffs argue, is a finding that Lay was acting within the scope of his employment at the time of the accident. However, Company asserts, and Plaintiffs do not controvert, that this decree was entered by default. Default judgments have no collateral estoppel effect. *Restatement (Second) of Judgments* § 27, comment e (1980).

In sum, Lay was not acting within the scope of his employment by Company at the time of the accident. Company therefore did not do or cause to be done a tortious act in Maine. It follows that the Maine long-arm statute affords no basis for this Court to exercise jurisdiction over the person of Company. Plaintiffs assert no other basis.

It is therefore *ORDERED* that Company's motion to dismiss the complaint against it for lack of personal jurisdiction be, and it is hereby, *GRANTED*.