MADELYN PILKINGTON, PROSECUTRIX, v. NEW JERSEY STATE HIGHWAY DEPARTMENT, DEFENDANT.

Submitted October 3, 1939—Decided January 12, 1940.

Before Brogan, Chief Justice, and Justices Donges and Porter.

For the prosecutor, *Joseph C. Paul.*

For the defendant, *David T. Wilentz, William A. O'Brien* and *Raymond Saltzman.*

The opinion of the court was delivered by

DONGES, J. *Certiorari* was allowed to review an order of the Somerset County Court of Common Pleas, made on June 12th, 1939, reversing a judgment of the Workmen's Compensation Bureau, entered February 4th, 1939, and dismissing the petition filed by the petitioner-prosecutrix in the bureau. The only question involved is as to whether the accident, which admittedly caused the death of prosecutrix' husband, arose out of and in the course of his employment with the New Jersey State Highway Commission.

The bureau found as a fact that death resulted from an accident arising out of and in the course of employment. The Court of Common Pleas found "as a fact, that though the decedent died as the result of an accident, the accident did not arise out of, and in the course of his employment."

The undisputed facts are that George Pilkington had been employed by the New Jersey State Highway Department for about fourteen years as a right of way negotiator, with a title of senior civil engineer. His duties consisted in negotiating for and acquiring rights of way for highway purposes. His headquarters were located at Trenton. The Department furnished him a state car which was garaged at No. 12 Earl street, Newark, which was a highway department garage. His immediate superior was John Franssen. The state highway engineer was James Logan. Decedent's usual hours of employment were from nine o'clock in the morning to five o'clock in the afternoon, although, it was testified by Franssen, he frequently put in more time in his work than the hours of ordinary employment required.

On November 23d, 1936, the decedent was in a privately owned automobile, owned and driven by one Norman A. Smith, an inspector of the highway department, together with Morris Radus and Otto L. Fritzsche, engineers of the highway department, all of whom were on their way to a dinner given by an organization known as the "Ten Year Club" at an inn on State Highway Route 29 several miles north of Trenton, near Princeton. Pilkington was a member of this organization. While passing through Somerville, the car collided

with a moving freight train at a grade crossing, and Pilkington sustained injuries from which he died in Somerset Hospital on January 14th, 1937. As above stated, there is no dispute that the injuries so received caused Pinkington's death.

Prosecutrix-petitioner introduced testimony that decedent on November 23d, 1936, drove into the garage at Newark at about four o'clock in the afternoon; that he spoke to some fellow employes at the garage about his desire to see Mr. Logan and discuss some matter that he had been working on; that decedent was in doubt as to whether to re-fill the automobile assigned to him and proceed to Trenton, or, because of the lateness of the hour, to go to the dinner with the hope that Mr. Logan might be there, and, if Mr. Logan was present, he might have an opportunity to discuss the matter with him there. He left the car at the garage, signed "out," went to his home, washed and dressed and went to Fritzsche's home in decedent's mother's car, as arranged with Fritzsche. Smith came in his own car, in which Radus was, to the Fritzsche home and the four proceeded to the place of accident, on their way to the dinner. Pilkington had procured a ticket some time before and clearly intended to attend the dinner. Logan was not a member of the club, but was an invited guest and, a few days before the affair, had concluded to attend.

The prosecutrix relies upon the testimony of Fritzsche to establish her case and particularly his testimony, as follows:

"The witness: He said he didn't know whether to go down with us or go down in the state car because he had to see Mr. Logan. And he spoke—— Q. And what did you do then after he said that? A. Well, George thought a while and then he said, 'Well. I might just as well go with you because I can't get there before five o'clock.' Q. And what did you say? A. Well, we went on home then. Q. Did you say anything about Mr. Logan being at the banquet that night? A. No, he did. Q. George did? A. Yes. Q. What did he say about that? A. He said he could see him at the banquet that evening. Q. Then you drove George to his home? A. That's right. Q. Let him off? A. Yes."

Both Mr. Logan and Mr. Franssen, Pilkington's immediate superior, testified that they knew of no matter that decedent could have been called upon to discuss with Mr. Logan at the time of the dinner; that decedent's work at that time was routine and that he would report to his chief thereon and not to Mr. Logan.

A narrow question is presented, namely, whether the major purpose in going to the dinner was to discuss a matter growing out of his employment with his superior, and attendance at the dinner was incidental, or whether the major purpose of the journey was to attend the dinner and incidentally to discuss a business matter with his superior, if opportunity afforded.

The statute requires that the accident shall arise out of and in the course of employment to afford a basis for compensation.

We conclude, after a consideration of all of the evidence, that the accident did not arise "out of and in the course of" any service that Pilkington was called upon to perform. *Bryant, Admx., v. Fissell*, 84 *N. J. L.* 72. He was not making the journey to the inn at the request of his employer or for the purpose of doing any work for his employer. He was going to attend the dinner, and, if any discussion touching any matter affecting his employment was subsequently to be engaged in, it was only incidental to the attendance at the dinner. The New York Court of Appeals, in *Marks Dependents* v. *Gray et al.*, 167 *N. E. Rep.* 181, in dealing with this subject, said:

"We do not say that service to the employer must be the sole cause of the journey, but at least it must be a concurrent cause. To establish liability, the inference must be permissible that the trip would have been made though the private errand had been canceled. * * * The test in brief is this: If the work of the employe creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. *Clawson* v. *Pierce-Arrow Motor Car Co.*, 231 *N. Y.* 273; 131 *N. E. Rep.* 914. If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though

the business errand had been dropped, and would have been canceled upon failure of the private purpose, though the business errand was undone, the travel is then personal, and personal the risk."

This rule was adopted by the Supreme Court of Wisconsin in *Barragar* v. *Industrial Commission of Wisconsin et al.*, 238 *N. W. Rep.* 368.

Applying this test, which we deem to be the proper one, we conclude that Pilkington was not on the highway by force of any duty owing to his employer. He was there in consequence of his own purpose to attend the social affair. Clearly, he had abandoned any intention, if it ever really existed, to seek out Mr. Logan at Trenton. His journey was to attend the dinner. Incidentally, but only incidentally if at all, some conversation might be had with Mr. Logan, if he attended the dinner. In this factual situation, we are forced to find that decedent did not meet with an accident arising out of and in the course of his employment.

The writ is discharged, with costs.