44 N.J. Super. 294 (1957)
130 A.2d 386
WILLIAM H. ROBINSON, PETITIONER-RESPONDENT,
v.
FEDERAL TELEPHONE & RADIO CORPORATION, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 4, 1957.
Decided March 19, 1957.
*296 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Leslie S. Kohn argued the cause for respondent.
Mr. Isidor Kalisch argued the cause for appellant.
The opinion of the court was delivered by FRANCIS, J.A.D.
Both the Workmen's Compensation Division and the County Court decided that petitioner, William H. Robinson, was entitled to an award of compensation. Respondent again appeals, urging that the accident which produced the disability did not arise out of and in the course of the employment.
At the threshold of the case, attention focuses on the factual character of the basic issue involved. It is well known that in the face of concordant findings thereon by the two tribunals whose jurisdiction has already been invoked, we will not make an independent determination unless the earlier conclusions are palpably erroneous and so plainly unjustified by the evidence that the interests of justice require their nullification. Mahoney v. Nitroform Co., Inc., 20 N.J. 499, 507 (1956).
The record discloses that Robinson was in the employ of respondent Federal Telephone & Radio Corporation as a micro-wave technician. His usual place of work was in Clifton, New Jersey. In October 1954 he and a fellow employee, John Farley, were ordered to the employer's plant in Mississippi to adjust relays in a micro-wave system. Farley was to drive his own car to that destination, taking Robinson with him as a passenger. The latter had no driver's license and did not know how to operate an automobile. Farley was to receive seven cents a mile for the trip. Respondent agreed also to pay for their food and incidental expenses and did so at a subsequent time. The men were supplied with a recommended but not required route. Otherwise, as the County Court justifiably found, they were on their own "with freedom to set their own hours of travel and to make their own choice of food and lodging accommodations."
*297 On the first day out Farley proceeded until they reached the Wayne Motel, which is near the intersection of Routes 214 and U.S. 301 in Maryland. They had been driving south on U.S. 301 and came upon the motel between 7:30 and 8:00 P.M. There is nothing to indicate that the stop was planned in advance or that they were familiar with the place. They checked in, deposited their belongings in the cabin assigned to them and, on discovering that there were no restaurant facilities there, returned to the car and drove slightly over five miles farther south on Route 301 to Marlboro or Upper Marlboro seeking a place to dine. Robinson was not certain which town it was but it was probably the former, because he said they did not pass through any other municipality and Marlboro is the first one south of the motel. They had dinner and some beer there, after which they attended a nearby movie. Following the performance they stopped at a tavern in the same locality and consumed a "couple" of beers. Then they got into the car and started back to the motel. At this time they had no other intention; they were not going to make any other stops or go to any place other than the motel. If the visit to the movie and the tavern constituted a deviation from employment (a point which we need not decide), it ended when they headed for home. Cf. White v. Frank Z. Sindlinger, 30 N.J. Super. 525 (App. Div. 1954); 1 Larson, Workmen's Compensation, § 19.25 (1956).
Farley was driving as usual. Robinson was not at all familiar with the roads and it does not appear that his companion had any greater knowledge. The most direct return course would have been north on Route 301. Where the tavern was with respect to this highway is not shown by the testimony. Whether Farley (who was not called as a witness) in proceeding from that point, by mistake found himself on Route 4 (Marlboro Turnpike) headed west, can only be conjectured, but to say that he took that road by design is likewise surmise. Robinson was not aware that they were moving west. So far as the actual proof shows, their only destination was the motel.
*298 In any event, when the accident occurred they were a few miles out on Route 4 and near the intersection of Ritchie Road which runs generally north and a little westward into Route 214, an east-west roadway. As already mentioned, the motel is located near the intersection of Routes 214 and 301 and, judging by the map in evidence, about eight miles east of Ritchie Road. Whether Farley intended to turn into Ritchie Road and head north, or go on to the next cross street and turn there, or whether he even knew he was off his course cannot be said. Somewhere near Ritchie Road, Farley was blinded by the lights of an oncoming car and went off the roadway into a telephone pole, injuring Robinson.
Respondent assumes that the testimony establishes the location of the pole as 100 feet west of or beyond Ritchie Road. That fact is not at all clear in the record. The question put to Robinson and his answer are:
"Q. The nearest intersection is what is known as Ritchie Road and the location of the pole about 100 feet west or beyond the intersection of Ritchie Road and Marlboro Pike; is that right? A. That sounds like the street, Ritchie Road, I believe. I don't know."
And the immediately preceding question and answer were:
"Q. That [referring to the pole] was located at an intersection of what is known as Marlboro Pike of  or Route number 4, Maryland; is that correct?
A. I believe so, Marlboro Pike, yes."
Later in the trial in discussing the place of accident respondent's counsel, who according to a comment of the Deputy Director, was looking at the map at the time, said among other things:
"They were on the so-called Ritchie Road which is marked here, which is now Route 221, I think the number is, which goes down off that, and also they turned off almost before they go all the way to Washington, in fact, the same way."
Beyond this the facts present another question, the answer to which, so far as the record is concerned, must be speculative. *299 Even assuming the pole to be 100 feet west of Ritchie Road, did Farley, while intending to turn into that intersection, lose control of his car near it when blinded by the lights and as a result proceed into the pole? A car traveling 25 miles per hour would move 100 feet in less than three seconds.
In the forefront of respondent's appeal is the general argument that once these travelers had registered at the motel, the employment connected activity terminated until the resumption of their travel toward Mississippi. The trial court's view of the issue in our judgment is unanswerable:
"This is an extreme proposition and deserves but little consideration. It is unrealistic to say that once a man has `checked in' at a motel he is then completely removed from his employment and without the beneficent coverage of the Workmen's Compensation Act while he engages in exploration to secure a meal. Where service to an employer imposes the need for travel there must be reasonably included within the scope of the employment the performance of such acts as are reasonably necessary to serve the basic subsistence needs of the employee."
There should be no doubt that when an employer sends an employee on a journey for business reasons and argrees to pay for lodging and food in the course thereof, the service tie continues while the employee is engaged in a reasonable pursuit of his meals. And in the absence of any limitation imposed by the employer, an exercise of reasonable discretion as to the selection of the place where a particular meal is to be taken ought to be recognized. Risks and perils of the road encountered by the traveler in thus seeking sustenance are ordinary and expected incidents of the employment.
In Walker v. Speeder Mach. Corp., 213 Iowa 1134, 240 N.W. 725 (1932), the Supreme Court of Iowa was confronted with a quite similar problem. The employee, an expert repairman and demonstrator, was sent on various trips by the company during which all of his expenses  hotel, food and transportation  were paid. On the particular trip out of which the controversy arose, he was in Ohio in the course of his work and while there received a telegram *300 to report to Pittsburgh, Pennsylvania, on a Monday morning. He took a train to that city, arriving there on Sunday afternoon. After registering at a hotel, he took a nap and then at about 9:00 P.M. inquired of the clerk where he could get something to eat. He was directed to a restaurant nearby and on his way there was struck and killed by an automobile. The court sustained an award of compensation, saying, inter alia:
"It is contended that the injury did not arise out of the employment. It must be recalled that while Walker had the option to select the place where he would eat and the time he would eat, yet his meals were paid for by his employer. As previously stated, the employer paid all of the traveling expenses including transportation, hotels and meals. It was necessary that Walker should travel, that he should rest at hotels, and that he should eat meals. It was as necessary to the performance of his work that he sustain himself by eating as that he reach the place where the work was to be performed by certain transportation. By virtue of his employment he was where he could not eat at home or at his regular boarding place. He was in a sense living in the employer's quarters, and at the time of the accident was on his way to get a meal furnished to him by the employer. This was a necessary incident to the work." 240 N.W., at page 732.
The question of compensability in this type situation usually involves traveling salesmen. But they are substantially analogous. For example, when such an employee was injured in a fall while crossing the street from a cafe where he had eaten dinner to the hotel where he was registered, the accident was treated as arising out of and during the course of the employment. Thornton v. Hartford Accident & Indemnity Co., 198 Ga. 786, 32 S.E.2d 816 (Sup. Ct. 1945). There the court said:
"* * * The eating of meals, while a pleasure indulged in by a traveling salesman and all mankind is as necessary to the continuance of his duties as the breath of life; and where his duties take him away from his home, his acts of ministration to himself should not  and we believe do not  take him outside the scope of his employment, so long as he performs these acts in a normal and prudent manner. Such activities, the performance of which are necessary to his health and comfort, while in a sense personal to himself, are nevertheless incidents of his employment and acts of *301 service therein within the meaning of the Workmen's Compensation Act, although only remotely and indirectly conducive to the object of the employment." 32 S.E.2d, at page 819.
The same jurisdiction sustained a compensation allowance in an earlier case concerning an investigator whose duties took him on trips away from his headquarters and who was burned to death while staying at a hotel. Railway Express Agency v. Shuttleworth, 61 Ga. App. 644, 7 S.E.2d 195, 197 (Ct. App. 1940). It declared:
"We are unwilling to say that an employee who is required to be away from home about the business of his employer will not be allowed compensation for an injury which occurs by reason of the fact that he has to eat or sleep during that time. Proper food and proper rest are necessary and incidental to the performance of the labor required * * *."
See also, Ramsey v. Leahey, 102 N.J.L. 513 (Sup. Ct. 1926), affirmed on opinion below, 103 N.J.L. 501 (E. & A. 1927); Watson v. Marshall's U.S. Auto Supply, Inc., 238 Mo. App. 1219, 186 S.W.2d 556 (Ct. App. 1945); 1 Larson, supra, § 25.21.
It must be recalled in the present case that there was no restaurant in the motel where Robinson and Farley stopped. Manifestly they were justified in making a reasonable search for an eating establishment. Thornton v. Hartford Accident & Indemnity Co., supra, 32 S.E.2d, at page 820; Watson v. Marshall's U.S. Auto Supply, Inc., supra, 186 S.W.2d, at page 559. And the record offers no substantial suggestion that one could be found or was found by them nearer than Marlboro. So the journey there was an inseparable incident of the employment. In this connection, the language of the Supreme Court of Missouri in Watson v. Marshall's U.S. Auto Supply, Inc., supra, expresses the same thought:
"As to respondent's meals, during the work day, we find no other reasonable inference in the evidence than that, while out on the territory on his employer's business, he was authorized to stop and obtain his lunch or other meal, at his employer's expense, at such hour as he might choose, and at such place most satisfactory *302 to him within convenient distance from his location at the time; that while so doing he was not abandoning his course of employment; * * *." 186 S.W.2d, at page 559.
Cf. Ryan v. St. Vincent de Paul Roman Catholic Church, 41 N.J. Super. 206, 211 (App. Div. 1956).
The respondent's denial of liability does not yield at this point. It argues that even assuming the work attachment was not severed by the meal at Marlboro, the deviation from the direct route home brought about that result.
Consideration of the claim of deviation takes a number of paths. Does the record actually contain proof of a deviation by Farley? Or proof of such a deviation which would sever the employment tie as to him? And in any event, was there any such deviation by Robinson which would bring about that result?
The uncontradicted statement of the only witness, Robinson, is that they left Marlboro with one intention, namely, to return home. Thus, when they set out on the road they were in the course of the employment. Presumptively they continued therein, in the absence of proof to the contrary. So far as Robinson knows, there was never any departure from the motel objective. How Farley happened to arrive on Route 4 cannot be said. Did he inadvertently make a wrong turn? Was he lost? Did he plan another route which he preferred, although it might have been somewhat longer? He was only a few miles away from Marlboro proceeding west when the accident happened. If he was confused as to his whereabouts or lost, perhaps he would have turned back when the first direction sign was reached. Answers to these questions can only be speculative.
A deviation because a driver is lost ordinarily would not affect the course of the employment. Generally departures which accomplish that result are conscious, willful ones; intentional independent side trips for some personal purpose unrelated to the work. There is an entire absence of support for such a finding in this case. Tushinsky v. National Broadcasting Co., 265 App. Div. 301, 38 N.Y.S.2d 608, 610 (App. Div. 1942), appeal dismissed, 292 N.Y. 595, *303 55 N.E.2d 369 (Ct. App. 1944), is pertinent. Tushinsky was a musician in a National Broadcasting Co. orchestra traveling in South America on a good will tour. They arrived in Rio de Janeiro by train and stopped at the Plaza Hotel which was directly across the street from the theater. At four in the afternoon the musicians, including Tushinsky, reported at the theater for rehearsal. They were then instructed to take their baggage when the rehearsal was over and be at the boat at 6:30 o'clock for dinner. After dinner they were to be taken by bus from the boat to the theater, and after the concert back to the boat which was to sail at midnight. The boat docked near the foot of the same avenue on which the hotel and theater were located, although it was necessary to make turns into different streets to reach there from the theater. About 5:15 all the musicians left the theater. At the time for the evening concert, Tushinsky was missing. It later developed that he had been killed about a mile and a half from the dock at about 6:20 P.M. while attempting to board a bus going in the direction of the boat. Compensation was allowed. The Appellate Division said:
"There is no explanation in the record as to what mission took the decedent to the point where he met his death. When last seen by anyone who knew him he was at the theater and left with the other musicians. It was surmised that he may have been purchasing gifts to bring back with him to the United States or that he was on some other personal mission, but the record is lacking in evidence from which such mission may be reasonably inferred. * * *
We can only guess as to what caused the decedent to deviate from the direct route between the hotel and the boat. It may have been some personal pursuit or he may have lost his way. It is not uncommon for a traveler to become lost in a strange city or confused by unfamiliar language, street signs and traffic. It was shown in this case that traffic conditions were unusually dangerous in Rio. The one conclusion is as likely as the other. But when last seen by those who knew him, he was in the course of his employment and the burden of showing a deviation from employment is thus cast upon those who assert it. * * * The common law presumption of continuance must prevail unless there is substantial evidence to the contrary."
*304 Under the circumstances, in our opinion such a deviation as would remove Farley from the course of his employment was not established by respondent.
Assuming, however, that Farley, for personal reasons on leaving Marlboro, had selected a destination other than the motel without informing or consulting his companion, and at the time of the accident was traveling a road inconsistent with the homeward route, would Robinson be barred from compensation? It is undisputed that Robinson was unfamiliar with the locality and was unable to drive an automobile. He was dependent upon Farley. He was a passenger in the car at the order of his employer and while traveling from Marlboro homeward (as he thought), he was certainly engaged in his employment. In a sense, unconsciously, he was a captive passenger on the side trip, if it was one, and the employer was responsible for placing him in that position. Surely until he realized or should have realized that they had departed from a reasonable homeward path and acquiesced therein, he could not be burdened with the consequences of Farley's misfeasance. Cf. Soden v. Public Service Transp. Co., 4 N.J. Misc. 817 (Sup. Ct. 1926), affirmed 103 N.J.L. 713 (E. & A. 1927); Watson v. Marshall's U.S. Auto Supply, Inc., supra, 186 S.W.2d, at page 560.
Affirmed.