85 N.J. Super. 320 (1964)
204 A.2d 621
ANGELA ANN CAVALCANTE, PETITIONER-RESPONDENT,
v.
LOCKHEED ELECTRONICS COMPANY, A CORPORATION, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Union County Court, Law Division.
Decided October 20, 1964.
*322 Mr. Thomas E. O'Gorman for petitioner-respondent.
Mr. John C. Demos for respondent-appellant (Messrs. Schreiber, Lancaster and Demos, attorneys; Mr. Gerald W. Conway on the brief).
HOPKINS, J.C.C.
Lockheed Electronics Company (Lockheed) appeals from an award of the statutory compensation benefits to Angela Cavalcante for the death of her husband Richard, pursuant to R.S. 34:15-7. The essential facts are not disputed but the legal issue involved creates what appears to be a case of novel impression in this State.
Decedent was employed as an electronics technician by Lockheed, with his regular place of employment being the Lockheed plant in Plainfield, New Jersey. Prior to April 1962 Lockheed had contracted for certain work, the nature of which is unimportant, at the United States Naval Base in New London, Connecticut. In April 1962 Cavalcante, along with four other Lockheed employees, volunteered to go to New London in order to expedite and clean up this particular project. The job in New London was only a temporary one, expected to last only a week. It was described in the testimony as a "crash program" and "clean up" job. In addition to their normal salary, the men were given an advance allowance to pay for their lodging, meals, laundry and telephone calls. Three men, including the decedent, drove their own *323 cars and received mileage and toll expenses. Decedent was in charge of this work team.
The men left Plainfield on Monday, April 23, 1962, and arrived in New London at about 4:30 that afternoon. After checking into a motel the men changed clothing and went over to the naval base to work, eating on the way. They worked that night from 6 P.M. until approximately 2 A.M. Tuesday morning. On Tuesday they worked from about 9 or 9:30 A.M. until 1:30 A.M. on Wednesday, except for time off for food. On Wednesday, April 25, 1962, they worked from about 9 or 9:30 A.M. until 6 P.M. They all had dinner in a nearby restaurant and then all returned to their motel at about 8:30 P.M. After showering and making telephone calls to their wives, they all decided to "go out and see what New London was like," arriving in town at about 10 P.M.
When they arrived in New London they went to an establishment called the Seven Brothers Restaurant. This is "a bar and a restaurant and dance hall." They were "drinking beer, listening to the music and talking over our work and what had to be done, what was left to be done and what we had accomplished so far." It was also established below that they were dancing and drinking scotch and sodas, decedent included. At 11:30 P.M. the decedent had a hamburger and coffee. When the Seven Brothers closed at midnight, the five men left and stood outside on the sidewalk, smoking and continuing their conversation, until about 12:30 A.M. on Thursday, April 26, 1962. Then they got into the decedent's car in which they had come to town, and started on the fatal journey toward their motel. The car went off the road when the decedent failed to negotiate a hidden curve in the road. As a result of this accident, Cavalcante died. The Division of Workmen's Compensation found that this accident arose out of and in the course of decedent's employment and made the award to the petitioner-wife which is the subject of this appeal.
In its appeal Lockheed argues strenuously that decedent's accident and death did not arise out of and in the course of *324 his employment, that there was no causal connection between the conditions of the work and the resulting injury, and that the injury did not have its origin in a risk connected with the employment, nor did it flow from that source as a natural consequence. It contends that Cavalcante's death did not occur as a result of an accident while driving to or from the naval base at Lockheed's expense. Cf. Filson v. Bell Telephone Laboratories, Inc., 82 N.J. Super. 185 (App. Div. 1964). Nor did it occur while he was returning to his motel after having dinner at a restaurant while away from home on his employer's business. Cf. Robinson v. Federal Telephone and Radio Corp., 44 N.J. Super. 294 (App. Div. 1957). It contends that the outermost limits of coverage for the traveling employee were established in Robinson, where the Appellate Division said:
"`* * * Where service to an employer imposes the need for travel there must be reasonably included within the scope of the employment the performance of such acts as are reasonably necessary to serve the basic subsistence needs of the employee.'" (at p. 299)
Lockheed argues that the acts of the decedent and his associates in the present case were not reasonably necessary to serve their basic subsistence needs, and that in fact the decedent had finished his work for the day, had had his evening meal, and from that time on his time was his own, just as if he had finished a long overtime session at the Plainfield plant at home. It contends that the evening trip from its start to its unfortunate finish was clearly an abandonment of and departure from the employment on a purely personal matter, having no connection whatever with the duties of his employment, his meals, his travel or his living conditions.
It is basic that an accident arises "in the course of" employment when it occurs (a) within the period of employment, (b) at a place where the employee may reasonably be, and (c) while he is fulfilling the duties of the employment, or doing something incidental to it. It arises "out of" the employment when the risk of such an occurrence is reasonably *325 incident to the employment. Such a risk is one that grows out of or is connected with what a workman has to do in fulfilling his contract of service. Belyus v. Wilkinson, Gaddis & Co., 115 N.J.L. 43, 47 (Sup. Ct. 1935), affirmed per curiam 116 N.J.L. 92 (E. & A. 1936). It immediately becomes evident that the standard always is reasonableness. Furthermore, the courts take the position that:
"An employee does not have to be actually engaged in work for the employer at the time of an accident. Van Note v. Combs, 24 N.J. Super. 529, 533 (App. Div. 1953). If the injury arises out of a risk which is reasonably incidental to the conditions and circumstances of the employment, the requirements for recovery are satisfied." Buerkle v. United Parcel Service, 26 N.J. Super. 404, 407 (App. Div. 1953). See also Rice v. Pharmaceuticals, Inc., 65 N.J. Super. 579 (App. Div. 1961), and Dooley v. Smith's Transfer Co., 26 N.J. Misc. 129, 133, 57 A.2d 554 (Dept. Labor, 1948).
Where an employee is traveling on a business trip away from his home, "reasonableness" within the meaning of the Belyus and Buerkle cases cited above, is given a very liberal construction. In Robinson v. Federal Telephone & Radio, supra, the Court quoted with approval from Thornton v. Hartford Accident & Indemnity Co., 198 Ga. 786, 32 S.E.2d 816, 819 (1945), when it said:
"`* * * The eating of meals, while a pleasure indulged in by a traveling salesman and all mankind, is as necessary to the continuance of his duties as the breath of life; and where his duties take him away from his home, his acts of ministration to himself should not  and we believe do not  take him outside the scope of his employment, so long as he performs these acts in a normal and prudent manner. Such activities, the performance of which are necessary to his health and comfort, while in a sense personal to himself, are nevertheless incidents of his employment * * *.'" at p. 300)
In Hancock v. Ingersoll-Rand Co., 21 A.D.2d 703, 249 N.Y.S.2d 243, 245 (App. Div. 1964), the court said, "[t]he test to be applied is whether the activity is reasonable activity at that place * * *." (Emphasis supplied)
It therefore becomes necessary to examine what acts, which "are reasonably necessary to serve the basic subsistence needs *326 of the employee," and are to be "reasonably included within the scope of the employment," come within the meaning of the Robinson case.
In determining this question it is proper and necessary and within the scope of the Workmen's Compensation Act to look at the "nature of the employment environment, [and] the characteristics of human nature." 1 Larson, Workmen's Compensation Law, sec. 20.00, p. 295 (1952). It must be kept in mind that "work-connected activity goes beyond the direct services performed for the employer and includes at least some ministration to the personal comfort and human wants of the employee." Ibid., sec. 20.10, p. 295. In Secor v. Penn Service Garage, 35 N.J. Super. 59 (App. Div. 1955) affirmed 19 N.J. 315, 320 (1955), the Supreme Court recognized that "normal human tendencies" must be given weight. In Davis v. Newsweek Magazine, 305 N.Y. 20, 110 N.E.2d 406, 409 (1953), the Court of Appeals recognized that while an employee is on a business trip, "the employee is not expected to wait immobile" during periods of layover. Further, the Appellate Division, in quoting from the trial opinion in Robinson v. Federal Telephone & Radio Corporation, supra, 44 N.J. Super., at p. 299 says, "It is unrealistic to say that once a man has `checked in' at a motel he is then completely removed from his employment * * *." In Hansen v. Industrial Commission, 258 Wis. 623, 46 N.W.2d 754, 756 (1951), the Supreme Court of Wisconsin said, "During the period of being at ease, upon leaving his last customer, he is not required to seek immediate seclusion in a hotel and remain away from human beings at the risk of being charged with deviating from his employment." While it is true that the Wisconsin statute (Wis. 1949, sec. 102.03(1)(f)) provides that "* * * [a]cts reasonably necessary for living or incidental thereto shall not be regarded as such a deviation," it is the opinion of this court that this language, while novel, only expresses what was intended in our Workmen's Compensation Act, and what is intended in our New Jersey decisions. In Hansen the decedent had dinner at a restaurant and night club, and was seen *327 there at 1:30 A.M. Several hours later he was found dead in his car on the highway. The court held this was not a deviation taking the employee out of his employment.
This court feels bound to hold that an employee, who is away from home at the direction of his employer, is not acting unreasonably where he seeks to satisfy his physical needs, including relaxation, provided this is done in a reasonable manner, as in the present case. Such was the holding in Fleer v. Glens Falls Insurance Company, 16 A.D.2d 186, 226 N.Y.S.2d 918 (App. Div. 1962). In that case decedent was in Potsdam, New York, on business and was to remain there for another day. He finished work about 3 P.M. His activities from that time until somewhere between 9 or 10 P.M. were not definitely known except that he called his wife between 5:30 and 6 P.M. and said he had an appointment after dinner. Between 9 and 10 P.M. decedent stopped for two drinks at a tavern three miles outside of Potsdam. Between 10:15 and 11 P.M. he stopped at another tavern a little closer to town for a few additional drinks. After leaving the tavern, heading back to his hotel in Potsdam, his car failed to negotiate a curve resulting in the fatal accident. The court upheld the award of compensation.
In Schneider v. United Whelan Drug Stores, 284 App. Div. 1072, 135 N.Y.S.2d 875 (App. Div. 1954), decedent and his superior were in Miami, Florida on business. Because they had about 24 hours to await the return flight for which they had reservations, they accepted the invitation of a local employee to go boating. Decedent drowned when the boat capsized. The court reversed the denial of the award and held this act of boating was reasonable to engage in.
In Kohl v. International Harvester Co., 9 A.D.2d 597, 189 N.Y.S.2d 361, 363 (App. Div. 1959), the court said, "The board was not bound to find decedent's activities other than `reasonable' and `normal' when, after working until a late hour, he left the motel and undertook a relatively short journey to obtain his evening meal and some incidental relaxation." (Emphasis added)
*328 The facts of Hancock v. Ingersoll-Rand Co., supra, are clearly distinguishable although, as appellant contends, "the decision reflects the rule established in Robinson." In Hancock recovery was denied because the court was of the opinion that the frequenting of cocktail lounges with unknown female companions was completely unreasonable. There is no difference in the principle or rule to be applied, as it is only a question of degree. In the instant case the visit to the tavern was with fellow employees simply seeking some reasonable relaxation. Reasonableness is the key to recovery.
In Meredith v. United States Industrial Chemicals Co., 14 A.D.2d 955, 221 N.Y.S.2d 113 (App. Div. 1961), decedent engineer was sent to the site of a new plant being constructed in Ohio and to be used to produce materials for submarine atomic reactors. Decedent spent an entire day until 6 P.M. meeting with other engineers, trying to solve construction problems. At 6 P.M. the meeting was adjourned to the cocktail lounge of the local hotel for further discussions. After a few drinks the group went to a restaurant for dinner and more discussion. After dinner the group went to a tavern "to get a change of scene" and because they were "tired of sitting." They continued the discussion, had a few more drinks and even danced. At 2 A.M., while returning to the motel, decedent was killed in an automobile accident. In allowing recovery to the widow, the court recited the test of reasonableness and said (221 N.Y.S.2d, at p. 115) that, "It is clear that those activities which are purely personal pursuits are not within the scope of employment as opposed to those required to satisfy the ordinary physical needs, including relaxation, of one away from home." (Emphasis added) The court also pointed out that the evening spent together was not entirely a matter of relaxation as they were still discussing the encountered problems and because of the sense of urgency for the completion of their work.
In Lewis v. Knappen Tippetts Abbett Engineering Co., et al., 304 N.Y. 461, 108 N.E.2d 609 (Ct. App. 1952), decedent had been sent to Israel as a consultant to the Israeli Government. *329 Before his work was fully completed, he went from Tel Aviv to Jerusalem with a United Nations convoy for the sole purpose of sight-seeing. The convoy was attacked by unknown Arabs, who broke a period of truce then in effect and decedent was fatally shot. The Court of Appeals of New York found that this employee was acting within the scope of his employment and that the accident occurred during the course of his employment because he was acting in a reasonable manner and the accident happened at a place where he might reasonably expected to have been.
Appellant contends that there is "no justification * * * for a conclusion that such `fun and relaxation' should be covered by Workmen's Compensation, merely because it takes place away from home." But that is not the only reason for not removing this activity from the coverage of the act, and standing by itself it could offer no such justification. The best answer to this argument is that of the Division of Workmen's Compensation, speaking through Judge Levine, in his decision below in this case, viewing it in light of the standards set forth in the above-cited cases. At p. 59 of the official transcript, he says:
"He had not only been working both long and odd hours, but as indicated earlier, was 150 miles from home and his normal environment. Can it be concluded that the social and recreational relaxation that the decedent sought was unreasonable under the circumstances detailed herein? For the first time in three days the decedent sought a bit of fun and relaxation. He drove a distance of approximately two miles to the local entertainment, a meaningless distance in an age where our society virtually lives on wheels. The decedent's activities that evening are reasonably consistent with the time, place and circumstances involved. The decedent, after all, was not expected to seal himself in a motel room after his working hours and to remain immobile until resuming his business activities the following morning."
Because it is reasonable for a traveling employee to seek some physical relaxation, and because this was done in a reasonable manner, this accident and the consequent death did arise out of and in the course of decedent's employment.
The judgment below is affirmed.