88 N.J. Super. 406 (1965)
212 A.2d 579
ALBERT J. HEBRANK, JR., PETITIONER-APPELLANT,
v.
PARSONS, BRINCKERHOFF, HALL & MacDONALD, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 29, 1965.
Decided July 19, 1965.
*408 Before Judges GOLDMANN, SULLIVAN and LABRECQUE.
Mr. James J. Gallagher argued the cause for appellant (Messrs. Johnson & Gallagher, attorneys).
Mr. Samuel A. Bloom argued the cause for respondents.
The opinion of the court was delivered by LABRECQUE, J.A.D.
Petitioner appeals from a judgment of the Hunterdon County Court affirming the dismissal of his petition for compensation by the Division of Workmen's Compensation.
In September 1959 respondent was engaged in a survey project in connection with a proposed highway relocation in the Flemington-Clinton area. Petitioner, who had been in its *409 employ for about five weeks, was sent down to the area as a member of the survey group on the project. He was to receive a weekly salary of $104 plus a $9 per diem allowance for expenses. The latter sum was unrestricted and could be used in any manner that he saw fit. While not required by respondent to do so, petitioner chose to live near the location of the work, and so took a room in the White House Motel, Whitehouse, rather than return daily to his home in Caldwell, New Jersey. The survey chief, J.P. Nealon, also took up residence at the same motel. According to petitioner, the decision that he and Nealon should live at the White House Motel was made by Nealon, but Nealon, while conceding that the company had used that motel before, stated that the decision was a mutual one. Ronald Jones, another member of the group, commuted back and forth from his home in Trenton.
The survey team had a company station wagon assigned to it. It was used to carry equipment, transport the members to and from the job site and perform other incidental tasks, such as finding a place to eat. The surveying equipment was kept in the station wagon.
On the evening of September 23, 1959 the survey group completed its work at about 4 P.M. Petitioner and Nealon then drove back to the motel in the station wagon, stopping at a tavern on the way. After showering, they took a nap until about 8 P.M. They then left for dinner in the station wagon, stopping on the way to visit some of Nealon's friends at a tavern in Clinton, eight miles to the west. There they assertedly consumed two or three beers but no hard liquor. They then went to a roadhouse at Pattenberg, some six miles further west where, it is conceded, each had two or three more beers. Thereafter, instead of returning to their motel, they drove south approximately 25 miles to a roadhouse or tavern known as the Rendezvous, located opposite Lambertville, at New Hope, Pennsylvania. They remained until closing time which was at approximately 2 A.M. Petitioner asserts that while there Nealon drank beer and cocktails while he drank only beer. However, Nealon averred that they both drank *410 beer and cocktails. It was conceded that the trip was for their personal enjoyment and was in no way connected with their employment.
Upon leaving the cocktail lounge Nealon, who had been driving since they had left work at 4 P.M., gave the keys to petitioner, who thereupon took the wheel. At about 3 A.M., while en route to the motel and about eight miles from Whitehouse, petitioner lost control of the car, which went into a skid, left the road and eventually collided with a telephone pole. The resultant injuries to petitioner were of a serious nature and incapacitated him for a long period.
Following a full hearing the judge of compensation dismissed the petition on the ground that the accident did not arise out of and in the course of petitioner's employment, but had occurred during a deviation therefrom. He rejected respondent's additional contention that the injuries were not compensable because they were brought about by petitioner's voluntary intoxication. R.S. 34:15-7. The county judge affirmed the conclusions reached in the Division.
Petitioner argues that the facts establish that the accident in question arose both out of and in the course of his employment. These conclusions are postulated upon one or more of three propositions: (1) there was no deviation since respondent furnished petitioner with transportation and a per diem living allowance and he was engaged on an errand which was within reasonable contemplation as incidental to his employment; (2) assuming a deviation, it had terminated prior to the accident and he was in the act of returning to his home on the job at the time of the accident; (3) he was performing a task which was of mutual benefit to him and his employer, or incidental to his employment, at the time of the accident.
Since the decision in Close v. Kordulak Bros., 44 N.J. 589 (1965), we are no longer required to weigh the evidence anew to determine whether the claimant has sustained the burden of proof of an accident arising out of and in the course of his employment by the preponderance of the evidence. Compare Russo v. United States Trucking Corp., 26 N.J. 430 *411 (1958). Our scope of review is now the same as in any appeal in a nonjury case, i.e., "whether the findings made could reasonably have been reached on sufficient credible evidence present in the record," considering "the proofs as a whole," with due regard of the opportunity of the one who heard the case to judge of the credibility of the witnesses. Close, supra, at p. 599. In substance, the trial judge found that the Rendezvous was a place where there was music, dancing and  apparently  girls, and determined that petitioner's visit there was entirely disconnected from his employment, and that his abandonment of the employment relationship was so extended as to time and distance as to preclude restoration of the employer-employee relationship at the time of the accident. We accept the factual findings below as supported by sufficient credible evidence and proceed to determination of whether under such a state of facts the accident can be considered as having occurred out of and in the course of petitioner's employment. Bryant, Adm'x. v. Fissell, 84 N.J.L. 72 (Sup. Ct. 1913).
Generally, an accidental injury sustained by an employee while going to or returning from his place of employment is deemed not to have arisen out of or been in the course of his employment. 1 Larson, Workmen's Compensation Law (1952) § 15.00; Ricciardi v. Damar Products Company, 45 N.J. 54 (1965); O'Brien v. First Camden Nat. Bank & Trust Co., 37 N.J. 158, 162 (1962); Gullo v. American Lead Pencil Co., 119 N.J.L. 484 (E. & A. 1938). To this rule, a number of exceptions have been recognized. Jasaitis v. City of Paterson, 48 N.J. Super. 103, 109-110 (App. Div. 1957); O'Brien, supra, at pp. 162-163; Moosebrugger v. Prospect Presbyterian Church, 12 N.J. 212 (1953); O'Regan v. New Jersey Hardware Co., 74 N.J. Super. 41 (Cty. Ct. 1962); Neumeister v. Eastern Brewing Corp., 73 N.J. Super. 193 (App. Div. 1962), certification denied 37 N.J. 88 (1962); Filson v. Bell Tel. Labs., Inc., 82 N.J. Super. 185 (App. Div. 1964). Petitioner contends that he comes within one of such exceptions.
*412 Petitioner first urges that the accident arose out of and in the course of his employment by virtue of his having been furnished with transportation and provided with a per diem living allowance while quartered away from home. He argues that his activities on the evening in question were normal activities of respondent's employees, of which it is assumed to have been aware. His position on this point is summarized by the statement in his brief that he:
"* * * undertook a risk reasonably incidental to his employment and that it occurred while he was doing what a man so employed may reasonably do within the period of time of his employment and in a place where he may reasonably be while thus employed."
Petitioner buttresses his argument upon Robinson v. Federal Telephone & Radio Corp., 44 N.J. Super. 294 (App. Div. 1957), and other cases which will be discussed infra.
In Robinson, petitioner, a technician-employee of respondent was directed to go, with a fellow employee, to respondent's plant in Mississippi, where his services were required. The trip was made in an automobile owned and operated by the fellow employee, who was to be reimbursed by respondent on a mileage basis. Respondent also paid for food, lodging and other expenses incidental to the trip, and petitioner and his partner were free to set their own hours of travel, choose their own route and select their own places to eat and sleep. At the end of the first day, upon discovery of the fact that their motel did not possess eating facilities, they drove five miles to a restaurant, where they had dinner and drank some beer. They thereafter attended a local movie and stopped at a tavern for refreshment. They were on the return trip to the motel when their car collided with a utility pole. In a subsequent suit for compensation the employer sought to avoid liability upon the theory that, having registered at the motel, petitioner's employment-connected activity had terminated for the day until travel was resumed the following morning. In ruling that the accident was compensable, we held:
*413 "There should be no doubt that when an employer sends an employee on a journey for business reasons and argrees [sic] to pay for lodging and food in the course thereof, the service tie continues while the employee is engaged in a reasonable pursuit of his meals. And in the absence of any limitation imposed by the employer, an exercise of reasonable discretion as to the selection of the place where a particular meal is to be taken ought to be recognized. Risks and perils of the road encountered by the traveler in thus seeking sustenance are ordinary and expected incidents of the employment." (at p. 299)
While Robinson may bear some factual resemblance to the case sub judice (In each case petitioner's automobile struck a utility pole!), it is clearly distinguishable. There, the accident occurred on the return from a five-mile trip which had for its primary purpose the procuring of food for petitioner and his companion. While they also attended a movie and visited a tavern nearby at the time of the accident they were en route back to the motel, with no other destination in mind. In the instant case petitioner and Nealon had travelled some 14 miles west, on Route 22, to Pattenberg where they had their dinner. Thereafter, instead of returning east to their motel, they travelled 25 additional miles in an entirely different direction (south) to a roadhouse in a neighboring state.
Petitioner also cites White v. Frank Z. Sindlinger, Inc., 30 N.J. Super. 525 (App. Div. 1954), and Cavalcante v. Lockheed Electronics Co., 85 N.J. Super. 320 (Cty. Ct. 1964). We find neither to be apposite.
In White v. Frank Z. Sindlinger, Inc., White, an employee of respondent, was furnished with a pickup truck to drive himself and other employees back and forth to work. On the day of the accident he and one Mayer, a fellow employee, left the job after quitting time and drove to the employer's shop, some six miles away. On the way they stopped and bought beer which they drank at the shop. After about 30 minutes there, during which oil cans were filled and a needed tool put in the truck, they started on their journey home. On the way they stopped at an inn and bought two quarts of beer which they consumed while parked further along the road. They *414 there met a friend and former fellow employee and after an extended conversation invited him to Lakewood for a beer. The three met at a bar there and had two beers. After 30 to 45 minutes, Mayer left for his home nearby and White resumed his journey home. En route the truck overturned and White was killed. The employer's position was that, while decedent had not deviated geographically, he had deviated in point of time so exclusively for his own purposes as to disentitle him to compensation. We there held, in an opinion by Judge (now Justice) Schettino, that:
"There is no argument that had decedent been killed on the very same road in an accident while on his way home directly from work in the truck which the employer had provided for his and his co-employees' transportation, there would be a compensable accident arising out of and in the course of the employment. Micieli v. Erie Railroad Co., 130 N.J.L. 448, 452 (Sup. Ct. 1943). Appellant admits the general rule but claims it does not apply here because there was an abandonment of the employment as a matter of time on the occasion of the fatal occurrence. Assuming there was a deviation in point of time, there is no question that such deviation had terminated, because decedent was on the road home when his death took place, proceeding along the usual route leading from the place where he customarily left Mayer, in Lakewood, to the Allenwood residence [of decedent]." (at pp. 528-529, emphasis added)
It is to be noted that the men had finished work at 4:30 P.M. and that the accident occurred at approximately 6:22 P.M. If allowance is made for a minimum of 30 minutes for normal travel time, the time delay was less than 1 1/2 hours.
In Cavalcante v. Lockheed Electronics Co., supra, decedent was one of a group of employees sent to perform certain specialized work at the U.S. Naval Base at New London, Connecticut. They were to receive their normal salary plus an allowance for lodging, meals, laundry, telephone calls, auto mileage and toll expense. On the day of the accident they had quit work at 6 P.M., dined in a nearby restaurant and then gone to their motel. Sometime thereafter they decided to go out for a night's entertainment. They drove into town, went to a restaurant, drank beer and scotch and soda, danced and *415 listened to music until closing time. They then left the building but remained outside in conversation for another half-hour. Thereafter, while driving back to the motel, they were involved in an accident in which decedent met his death. The County Court there held that an employee who is away from home at the direction of his employer is not acting unreasonably where he seeks to satisfy his physical needs, including relaxation, provided this is done in a reasonable manner  and that decedent's activities, involving travelling a distance of two miles to the restaurant in question, comported with reason.
In White we were confronted with no such departure from normal activities as is presented by the facts sub judice. White remained in the general area in which he was supposed to be during the entire period. While there was some delay during the journey (1 1/2 hours) the accident occurred on a portion of the highway which he would have normally traversed in doing that for which the automobile had been entrusted to him. The opinion in Cavalcante (which is presently on appeal) held that the action of the employees, who had been working unusually long hours, in travelling two miles into town for refreshment and recreation was reasonable. Here the delay was over five hours and the distance travelled was 25 miles  and into another state.
If the arrangement between petitioner and respondent, including the per diem allowance, authorized the use of the station wagon for errands in connection with maintenance on the job of petitioner and Nealon, it was incumbent upon them to make use of it in a reasonable manner. Their use of it for what the judge of compensation found to be a purely personal errand, did not comport with reason. Assuming that plaintiff and Nealon were justified in seeking to satisfy their need for relaxation, a fact which we find unnecessary to pass upon at this time, proof is completely lacking that sufficiently adequate facilities to this end were not available nearer than New Hope. See Robinson v. Federal Telephone & Radio Corp., supra, 44 N.J. Super., at p. 301.
*416 Petitioner next urges that regardless of the status of his trip to New Hope, the return trip was covered since at that time he was engaged in the performance of an obligation which he owed to respondent as an employee, i.e., to return the station wagon and its contents to the place where it was intended by the employer that it should be.
One of the exceptions to the rule denying compensation for injuries received by employees while going to and coming from work involves situations where there has been a turning aside from the customary route in order to do something for and at the direction of the employer. O'Brien v. First Camden National Bank & Trust Co., supra, 37 N.J., at p. 162. During the extension of a journey, and while retracing his steps, an employee is considered within the protected scope of his employment. Cases within this exception involve situations in which there is direct authorization by the employer to make the trip, Robinson v. Federal Telephone & Radio Corp. and White v. Sindlinger, supra, and cases in which the trip is made for the benefit of the employer, notwithstanding that there was no specific authorization therefor. Thus in Green v. DeFuria, 19 N.J. 290 (1955), the petitioner, a garage station attendant, had left the work premises and gone across the street to silence a short-circuited horn which was interfering with the performance of his duty to take business messages over his employer's telephone. And in Green v. Bell Cleaners, 65 N.J. Super. 311 (App. Div. 1961), affirmed o.b. 35 N.J. 596 (1961), a deviation from an authorized trip by an employee who was permitted to use the company vehicle to go to and from work, of some four or five miles in a different direction to take another employee home from work, was held not to be unreasonable. He had been previously authorized to pick up employees going in his direction but had not been authorized to carry employees in the direction in which he was going at the time of the accident. In that case defendant's business was conducted on a military reservation to which transportation was difficult and it was held that taking *417 the employee home from work was covered, it being beneficial to the employer as well as the employee.
The facts sub judice are in no wise analogous to those in the cited cases. The trip to New Hope, but for which petitioner's injury would not have occurred, was not undertaken to serve any interest of his employer  and did not do so. The return trip was not motivated by petitioner's desire to return the respondent's station wagon and its contents to the motel or job site. On the contrary, he and Nealon were using it as a convenient means of transportation home  probably the only one available at that hour  and thus serving their own ends. The return of the vehicle  something respondent was entitled to in any event  would have been merely an incidental result of its unauthorized use by petitioner and Nealon.
Petitioner next urges that if it be held that the trip to New Hope was without express or implied authorization and amounted to material deviation, the deviation had terminated prior to the accident and he was again in the course of his employment when, on the return trip, the accident occurred. We disagree.
In Clegg v. Interstate Insurance Co., 130 N.J.L. 307 (Sup. Ct. 1943), petitioner, an insurance adjuster employed to repossess cars, was sent to Nanuet, New York, to repossess a car. Finding the owner absent, he continued on to meet his wife at Newburgh, New York, a distance of some 35 miles. At about midnight he began the return trip over a route which would bring him to the place where he hoped to find the car to be repossessed  and to his home in Westwood, New Jersey. He testified that he intended to repossess the car on the return trip. Shortly after leaving Newburgh, he met with an accident for which he was awarded compensation. In reversing the award, it was held:
"In Pilkington v. State Highway Dept., 124 N.J.L. 11, this court approved the test as laid down by the New York Court of Appeals in Marks' Dependents v. Gray et al., 167 N.E. 181, 183, that `If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some *418 purpose of his own. Clawson v. Pierce-Arrow Motor Car Co., 231 N.Y. 273; 131 N.E. 914. If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the private purpose, though the business errand was undone, the travel is then personal, and personal the risk.' * * *" (at p. 308)
And further:
"It becomes necessary in each case to determine, therefore, whether the travel is on the employer's business or on personal business, and we find as a fact that when Mr. Clegg left Nanuet and went approximately thirty-five miles beyond any point where the business of his employer required him to be, in order to keep a previously made personal engagement, that he then abandoned his employment. Compare Okin v. Essex Sales Co., 103 N.J.L. 217; affirmed, 104 N.J. L 181; Shefts v. Free, 105 N.J.L. 577." (at p. 309)
Somewhat analogous is Dooley v. Smith's Transfer Co., 26 N.J. Misc. 129, 57 A.2d 554 (Dept. Labor 1948), where petitioner, who resided in Metuchen, was employed in Newark as a salesman for respondent. He was required to use his personal automobile in his work and was paid a weekly allowance for its use by his employer. The judge of compensation found that petitioner had finished work at 4:30 P.M. and thereafter proceeded to make a round of taverns with a fellow employee for their personal enjoyment. At about 2:30 A.M., while proceeding homeward by the route which he would normally have travelled, he met with an accident for which he sought compensation. In denying recovery because his normally covered homeward trip from work had lost its covered character by being deferred until the early morning of the next day (ten hours afterwards), it was held:
"* * * The problem as presented is one wherein the question arises as to whether the employee, having a right to use his automobile as part of his contract of employment, has the right to deviate from his employment for so long a time as he did in this case, and during such deviation, engage in a series of personal activities unrelated to his employment, and then, upon proceeding homeward, still to be within the sphere of his employment to the end that if an accidental injury arose, it is compensable.
*419 It is my conviction that where an employee leaves his place of business for so long a period of time as that taken by the petitioner in this case, and engages in so many personal activities during that period of time, wholly unrelated to his employment, in so doing he completely abandons his employment, even though he subsequently worked his way on to the highway which was on his way homeward bound. There must be a resemblance of reasonableness in a deviation from the sphere of employment in order that one may be reasonably considered within that sphere. In considering the reasonableness of the deviation, in order to determine whether or not one has taken himself out of that sphere, and by doing so abandoning his employment, the time element and the activities of the individual should be carefully scrutinized and considered. Let us assume that the petitioner, after his regular working hours, decided instead of driving his car toward Metuchen, which is south of Newark, instead elected to take a week's fishing trip in the woods of Maine. Then, on his return home went through Newark and on his way home to Metuchen would have an automobile accident and was injured. Here certainly the element of time and the activity of the petitioner would be carefully scrutinized and considered in determining whether or not the employment was abandoned until such time as the petitioner was subsequently on his way to work or engaged in his work, in order to bring him back within the sphere of his employer's interest." (at pp. 132-133)
The facts sub judice are even stronger in favor of respondent since they include a 25 mile deviation from the normal homeward course, a fact not present in Dooley.
In Neumeister v. Eastern Brewing Corp., supra, Dooley was characterized thusly:
"* * * Of course `it is quite possible * * * for an employee * * * to complete his business errand and then embark on such a series of personal activities that the identity of the return business trip would be lost in the process, as it apparently was in Mr. Dooley's case, [Dooley v. Smith's Transfer Co., 26 N.J. Misc. 129, 57 A.2d 554 (Dept. Labor 1948)] when his normally-covered homeward trip from work lost its covered character by being deferred until the middle of the night.' 1 Larson, The Law of Workmen's Compensation, § 19.29, p. 274. * * *" (at p. 198)
In White v. Sindlinger, where, as in Dooley, the deceased employee had also regained the route home at the time of the accident, Dooley was distinguished because of the long period of time which intervened during which Dooley had done nothing *420 which was related to his employment. In Green v. Bell Cleaners, supra, 65 N.J. Super., at pp. 318-319, Dooley was cited as an example of a material deviation by an employee for purposes unrelated to the employer's business, which relieved the employer of responsibility during the term of the deviation.
In the instant case petitioner's injuries did not result from an accident which arose out of and in the course of his employment but occurred after he had left the course thereof and had become involved in a personal errand entirely disassociated therefrom. His deviation was for such a distance and length of time and for purposes so disconnected from his employment as to manifest a total abandonment thereof. Clegg v. Interstate Insurance Co., supra (130 N.J.L., at p. 309); Cole v. Borough of Keansburg, 17 N.J. Misc. 380, 9 A.2d 792 (C.P. 1939). Thus, the fact that he was in the act of returning from the deviation did not operate to restore the coverage lost. Dooley, supra. Cf. Colucci v. Edison Portland Cement Co., 94 N.J.L. 542 (E. & A. 1920); Hanover v. Pennbrook Golf Club, 10 N.J. Misc. 378, 159 A. 387 (Sup. Ct. 1932); Koeppel v. Irvington Window Cleaning Co., Inc., 133 N.J.L. 303 (E. & A. 1945); Stinson v. Dairymen's League, &c., Inc., 14 N.J. Misc. 671, 186 A. 687 (Dept. Labor 1936).
We find no merit to the remaining points urged.
The judgment of the Hunterdon County Court is accordingly affirmed.