JOHN CINQUE, PLAINTIFF-APPELLANT, v. CROWN OIL CORPORATION, DEFENDANT-RESPONDENT; CHESTER W. LANGTON, DEFENDANT.

Argued May 23, 1946—Decided September 12, 1946.

For the plaintiff-appellant, *Kellogg & Chance* (*R. Robinson Chance,* of counsel).

For the defendant-respondent, *Coult, Satz, Morse & Coult* (*Joseph Coult,* of counsel).

The opinion of the court was delivered by

McGEEHAN, J. Plaintiff appeals from a judgment in favor of the defendant, Crown Oil Corporation, entered in the Supreme Court upon nonsuit at the Passaic circuit. Plaintiff.sued Crown Oil Corporation and Chester W. Langton to recover damages for personal injury sustained by him when struck by an automobile driven by the latter. Langton was not served with process and the case proceeded to trial against Crown Oil Corporation.

The accident in question happened on Plaza Road, Fairlawn, Bergen County, at about 7:50 A. M. according to one witness, and between 8:15 A. M. and 8:30 A. M. according to another. Langton lived on Plaza Road about eight to ten blocks away from the intersection of Plaza Road and Route 4, about which intersection several stores and shops were grouped, including a barber shop. He owned the car involved,

and the accident happened as he drove it from his home along Plaza Road toward the intersection of Plaza Road and Route 4. After the accident, he continued driving until he reached the intersection, when he parked his car in front of the stores, and he was arrested as he left his car to go to the barber shop. He was examined by Dr. Brennan at Fairlawn police headquarters at 9:00 A. M. and found to be "under the influence of intoxicating liquor, not in a fit condition to drive a car."

Langton's home in Fairlawn was about nineteen miles from the office and yard of his employer, Crown Oil Corporation, at Harrison, New Jersey. He had been credit manager for Crown for four years and his duties were to investigate the affairs of prospective customers; to arrange with existing customers as to credit relations, and to protect the accounts receivable of the Crown Oil Corporation. Such credit transactions extended over the territory within a twenty-five mile radius of the office in Harrison. He had been accustomed to use his car in and about his duties as credit manager whenever required, and he stated that such occasions occurred about three times a week. The officers of the Crown Oil Corporation knew that he so used his car on company business, and while no specific arrangement was made as to gas and oil, his car was furnished with gas and oil at the yard of the Crown Oil, without cost. He also used his car to go between his home and the Crown Oil office. Prior to the accident, he had driven his car 9,000 miles on company business. He was not required to report to the office in the morning before he started work; he worked whatever hours were necessary—sometimes early in the morning, sometimes late at night; there was no restriction on the hours during which he was to perform his duties. The nature of the work was such that he would start the day's work sometimes without first going to the office; at other times he would go to the office and thereafter make visits from the office during the day. Crown Oil furnished him with no other means of transportation for performing his duties.

The only testimony concerning the purpose which actuated Langton in making the trip during which the accident happened was given by him as follows:

"*Q.* What time of the day was that? *A.* As I recollect, approximately ten minutes of eight.

"*Q.* At that time where were you going? *A.* I was going to a barber shop.

"*Q.* Prior to the time that you had this accident on that morning, had you any understanding with any other Crown Oil Corporation employee as to doing anything in connection with the Crown Oil Company business on that morning? *A.* Yes.

"*Q.* With whom did you have that understanding? *A.* Joseph Coughlan.

"*Q.* What was the understanding between you and Mr. Coughlan? *A.* We were to meet at number four highway and Plaza Road in Fairlawn, New Jersey, and proceed from there to a customer of the Crown Oil Corporation, the place of business of a customer of the Crown Oil Corporation.

"*Q.* When did you make that arrangement with Mr. Coughlan? *A.* I don't know."

The barber shop referred to was identified as the barber shop at the intersection. Joseph Coughlan was a salesman for Crown Oil. The customer referred to in the above excerpt was the Grand Fairlawn Cleaners and Dyers, which had been a customer of Crown Oil for several years. It was common practice for the credit manager to accompany the salesman in settling accounts of customers.

On a motion for nonsuit, all of the evidence adduced by the plaintiff, and every legitimate inference which may be drawn therefrom, must be considered in the light most favorable to the plaintiff's claim, and if such evidence or inference of fact will support a verdict for plaintiff, such motion should be denied. *Strutko* v. *Mann,* 124 *N. J. L.* 183.

The burden of proving that Langton was on his master's business lay on the plaintiff. *Van Genderen* v. *Paterson Wimselt Thrift Co.,* 128 *N. J. L.* 41. While the plaintiff is not required to prove that service to the master was the sole cause of the journey, he must prove at least that such service was a concurrent cause. *Marlin* v. *Hasbrouck Heights, &c., Savings Association,* 132 *Id.* 569; *Restatement of the Law, Agency,* § 236.

There is no direct evidence connecting this trip from Langton's home to the intersection with any meeting with Coughlan and no direct evidence that Langton on the morning in question intended to keep any appointment with Coughlan, either at the termination of the trip in question or at any other time. Can the understanding with Coughlan to meet at the intersection "on that morning," together with the other evidence, support a legitimate inference that the trip in question was made with any purpose on the part of Langton of keeping an appointment with Coughlan at the termination of this trip or within a reasonable time thereafter? Considering it, as we must, in the light most favorable to the plaintiff's claim, we conclude that it cannot. The particular time arranged for the meeting might have been 8:30 A. M., 11:30 A. M., 7:00 A. M., or any other time during the morning, and no proof was adduced from which a legitimate inference might be drawn as to the particular time; all is left in the realm of pure speculation. Since the plaintiff failed to prove that service to the master was the cause of the journey, or at least a concurrent cause, the nonsuit was proper.

The judgment is affirmed.

*For affirmance*—THE CHIEF JUSTICE, BODINE, DONGES, OLIPHANT, WELLS, FREUND, McGEEHAN, McLEAN, JJ. 8.

*For reversal*—PARKER, HEHER, PERSKIE, RAFFERTY, DILL, JJ. 5.