Stephen R. **KIMBALL**, Plaintiff,

v.

**UNITED STATES** of America, Defendant.

Civ. A. No. 1082–64.

United States District Court
D. New Jersey.

Jan. 17, 1967.

---

5. See Giles v. Harris, 189 U.S. 475, 23 S.Ct. 639, 47 L.Ed. 909, for application of the statute to a state constitution.

White & Simpson, by Thomas Simpson, Woodbury, N. J., for plaintiff.

David M. Satz, Jr., U. S. Atty., Newark, N. J., by Donald G. Targan, Asst. U. S. Atty., for the United States.

## OPINION

COHEN, District Judge:

The primary issue in this personal injury negligence action, under the Federal Tort Claims Act[1], is whether the United States is vicariously liable under the doctrine of *respondeat superior* for the alleged negligent operation of the privately owned automobile of a United States soldier reporting late for duty who, it is claimed, was an employee "acting within the scope of his office or employment" at the time of a collision between his automobile and that of another in which the plaintiff, Stephen R. Kimball, was a passenger.

The liability phase of the case was tried to the Court and the testimony revealed the following: Sergeant Luther P. Mosley, the employee in question, was stationed in Fort McNair, Washington, D. C. Prior to October 22, 1962 he was advised of his permanent transfer to an army unit in Germany. He requested and received, on October 22, 1962, a 30-day delay en route which was to com-

---

1. 28 U.S.C. § 1346 provides:
"the district courts * * * shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any *employee* of the Government while *acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable* to the claimant in accordance with the law of the place where the act or omission occurred." (Emphasis added.)
28 U.S.C. § 2671 defines the terms "employee of the Government" (includes a member of the military forces) and "acting within the scope of his office or employment" in the case of a member of the military forces (acting in line of duty). 28 U.S.C. § 2674 provides that the United States is liable in tort claims cases "in the same manner and to the same extent as a private individual under like circumstances."

mence at 12:01 A.M., November 14, 1962 and was to terminate at noon on December 14, 1962, at which time he was to report to the Overseas Replacement Station at Fort Dix, New Jersey. Sergeant Mosley was permitted to choose any means of transportation, public or private, from Fort McNair to Fort Dix, the order authorizing the leave being silent as to the means of transportation. He was authorized travel allowance to the extent of 6 cents per mile for a direct trip from Fort McNair to Fort Dix regardless of the actual cost, the mode of travel or the route actually taken. He left Fort McNair on November 14, 1962 and drove his privately owned automobile to Texas and Colorado on his own personal business. December 9, 1962, he left Colorado and returned to Fort McNair, Washington, D. C., on December 13, 1962 for the purpose of gathering together his clothing and belongings prior to reporting to Fort Dix. He spent the night at Fort McNair. He testified that he had the impression that, despite the written order requiring him to report to Fort Dix at noon December 14, 1962, he could automatically extend his reporting time to midnight December 15, 1962. In addition to a 30-day leave, he testified that he thought he also had one further day of travel time and "one day of grace," as a matter of military custom, thus making a total of 32 days. During the morning of December 14, 1962 he made inquiry of an unidentified sergeant at the Personnel Office in Fort McNair as to the time he was required to report to Fort Dix and said he was informed he had until midnight of December 15, 1962. To the contrary was the testimony of Captain Klein, Chief of Military Personnel, who stated that no written military order can be modified except by a commanding officer; that any so-called "grace period" is non-existent; that the travel time was included in the 30-day leave, which expired on December 14, 1962 at noon; and that any failure to report as ordered resulted in a status of his being absent without leave.

On December 15, 1962 at 3:55 A.M., at which time Mosley was then more than 15 hours overdue, while en route from Fort McNair, Washington, D. C., to Fort Dix, at a point between Exits 3 and 4 on the New Jersey Turnpike, his automobile was involved in a collision with another vehicle. Following the accident, Mosley reported for duty at Fort Dix at approximately 7:30 A.M. on December 15, 1962. No disciplinary action was instituted against him for his belated arrival.

The plaintiff urges that at the time of the accident in question, even if then late in reporting for duty, Sergeant Mosley was "acting within the scope of his office or employment," since his sole purpose in traveling to Fort Dix was in compliance with military orders. He concedes that had this accident occurred in Texas or Colorado where Mosley was pursuing his personal affairs, then no liability could be visited upon the United States. However, he contends that when, on December 9th, 1962, Mosley left Colorado and proceeded to Fort Dix, New Jersey, via Fort McNair, Washington, D. C., he had reentered upon his master's business. The plaintiff maintains that the relocation of military personnel is a common occurrence and is a fundamental factor in the operation of the Army's affairs and done strictly in compliance with military travel orders over which a soldier has no control. He argues, therefore, that the United States is responsible for any negligent act committed by its employee during the course of travel under military orders under the doctrine of *respondeat superior*.

The position of the defendant, United States of America, is that there was no agency or *respondeat superior* relationship between it and Sergeant Mosley at the time of the accident in question, and, therefore, it is not liable to the plaintiff for his injuries.

Scope of employment determinations are governed by the *respondeat superior* doctrine of state law. Williams v. United States, 350 U.S. 857, 76 S.Ct.

100, 100 L.Ed. 761 (1955); 28 U.S.C. § 1346. New Jersey law would be applicable, but the State Courts have no jurisdiction over claims against the United States. Accordingly, no strictly analogous situation is to be found in New Jersey cases. Nor do any reported decisions applying New Jersey state law in a similar fact situation appear in this Circuit. It is necessary, therefore, to apply the New Jersey law of *respondeat superior* and to look to other jurisdictions where decisions were based upon the unique military relationship. Under the Federal Tort Claims Act, supra, the United States is to be treated as any other private employer. The use of the term "line of duty," contained therein, does not expand the area of the Government's liability for acts of its employees beyond traditional concepts. United States v. Campbell, 172 F.2d 500 (5 Cir. 1949), cert. den. 337 U.S. 957, 69 S.Ct. 1532, 93 L.Ed. 1757; United States v. Eleazer, 177 F.2d 914 (4 Cir. 1949), cert. den. 339 U.S. 903, 70 S.Ct. 517, 94 L.Ed. 1333.

■ Initially, distinction is to be made between a permanent change of station (PCS) and a trip for temporary duty (TDY). In the former, a soldier permanently assigned to one station is permanently transferred to another. In the latter, a soldier permanently assigned to one station is ordered to another station on a temporary basis to perform a specific task upon the completion of which he is to return to his home or permanent station. Cases involving TDY have often found a serviceman "within the scope of his [office or] employment" while traveling between his permanent and temporary stations. Satterwhite v. Bocelato, 130 F.Supp. 825 (E.D.N.Car.1955); Marquardt v. United States, 115 F.Supp. 160 (S.D.Cal.1953); Hopper v. United States, 122 F.Supp. 181 (E.D.Tenn.1953), aff'd per curiam, 6 Cir., 214 F.2d 129. In PCS cases, it has been generally held, especially with a delay en route, that a serviceman is not within the scope of his employment during the period within which he leaves one permanent station and reports to another. In between, his status is to be considered the same as a private employee on leave or on vacation. The rationale of these decisions is that when a serviceman is permanently transferred from one station to another, with a delay en route, he is a free agent acting for his own personal benefit during the delay or leave, and thus not furthering the interests of the United States, nor subject to its right of control. See United States v. Eleazer, supra, wherein it was also held that the reimbursement of travel expenses was irrelevant, and did not impose liability. See also Noe v. United States, 136 F.Supp. 639 (E.D.Tenn.1956). In Chapin v. United States, 258 F.2d 465, at 469–470 (9 Cir. 1958), cert. den. 359 U.S. 924, 79 S.Ct. 607, 3 L.Ed.2d 627 reh. den. 359 U.S. 976, 79 S.Ct. 875, 3 L.Ed.2d 843 (1959), it was held:

> "* * * [T]he act of a soldier's travel on a permanent change of station is not a part of the duties for which he is engaged. It is conduct the control of which is beyond the terms of employment."

In keeping with the conclusion reached in *Chapin,* supra, Sergeant Mosley's duties were to be performed at his new post. At the time of the accident his duties had terminated at Fort McNair and he had not yet begun them at Fort Dix. As stated in *Chapin,* 258 F.2d at pages 470–471:

> "Unless a soldier is to be considered peculiarly different from other employees of the government for the purposes of *respondeat superior,* the activity of traveling between permanent duty stations is 'merely during employment' and not within the scope of employment." Citing Jozwiak v. United States, 123 F.Supp. 65 (S.D. Ohio E.D.1954).

In his effort to impose liability upon the United States, the plaintiff relies heavily upon United States v. Kennedy, 230 F.2d 674 (9 Cir. 1956) and O'Brien v. United States, 236 F.Supp. 792 (D.

Maine 1964). These cases are distinguishable. In *Kennedy*, the accident occurred during the soldier's leave time while he was en route to an assigned new post and the Government admitted by answer that he was acting within the scope of his employment. In the instant case, the soldier's leave had expired and the Government denies that he was acting within the scope of his employment, contending rather that, after detour and delay devoted to his own purposes, he had not as yet returned to his assigned employment. In *O'Brien*, the serviceman was on direct route to a new station. He had a 13-day travel and 30-day delay, or leave, before reporting. He had planned to leave his wife in Wisconsin while still on direct route, but two days after beginning his trip, he was involved in an accident while in Maine before the contemplated deviation to Wisconsin. The Court found dual purpose and scope within the meaning of Maine law for the purposes of *respondeat superior*. In the instant case, deviation or detour had been completed as well as an *awol* status acquired before a belated reentry into an active scope of employment status at Fort Dix, New Jersey. It is logically inconceivable that an *awol* soldier is to be considered in the eyes of the law on the business of the United States for the purpose of imposing liability upon the United States on agency principles. To hold otherwise would be to vicariously impose upon it strict liability contrary to the Federal Tort Claims Act, supra, which places the United States through its express statutory consent in the role of any other private employer for liability purposes.

While the law of the State of New Jersey controls in the determination of the agency question of "scope of employment," there are no reported cases of that State pertaining to United States military personnel, as in the instant case, because under the Federal Tort Claims Act, the United States Courts have original jurisdiction. Therefore, the substantive law of New Jersey will be of assistance by way of analogy, and the federal decisions persuasive where the question of scope of employment has been considered.

Under New Jersey law, mere employment does not of itself impose tort liability upon an employer. The test for the imposition of liability is whether the employee at the time and place in question is on the assigned business of his employer. Kohl v. Albert Lifson & Sons, 128 N.J.L. 373, 25 A.2d 925, 140 A.L.R. 1146 (E. & A.1942); Muckin v. Hubbs, et al., 128 N.J.L. 395, 26 A.2d 286 (E. & A.1942). Although New Jersey applies the "dual purpose" rule of joint or mutual interest, such as where a concurrent cause of the trip is in furtherance of the employer's interests and business as a concurrent cause of the trip, to hold that the employee is within the "scope of employment," even then, the perimeter of "scope" is confined to instances where the employee is *required by the employer* to use a particular vehicle. See: Cinque v. Crown Oil Corp., 135 N.J.L. 38, 48 A.2d 777 (E. & A.1946) and Hebrank v. Parsons, 88 N.J.Super. 406, 212 A.2d 579 (App.Div.1965). The New Jersey law provides that if an employee is returning to his place of employment to perform an assigned task and the act of returning itself does not further the business interests of his employer, then he is not in "scope" until such time as he reaches the place assigned for his work. Krolak v. Chicago Express, 10 N.J.Super. 60, 76 A.2d 266 (App.Div.1950). So also where the conduct of the employee is unauthorized and unconnected with the employer's business, such conduct is not within the scope of his employment, Wright v. Globe Porcelain Co., 72 N.J. Super. 414, 179 A.2d 11 (App.Div.1962). To like effect is the Restatement of the Law of Agency, 2d § 239, Comment b, and the "dual purpose" doctrine set forth in section 236.

Upon the present facts, it seems clear that New Jersey Courts would find Mosley to have been acting outside the scope

of his employment at the time and place in question. Aside from the matter of state substantive law, the federal cases are persuasive with regard to United States Servicemen. In Chapin v. United States, supra, the Court held that a serviceman with a permanent change of station status, in the act of traveling was not performing any of the duties for which he is engaged, but rather that his conduct is such as is beyond the terms, the purpose and control of his employment.

A most recent case, Cobb v. United States, 247 F.Supp. 505 (N.D.Ill.1965) aff'd Cobb v. Kumm, 367 F.2d 132 (7 Cir. August 1966) is closely analogous to the instant matter. In *Cobb*, a soldier was on leave transferring from his post in Denver, Colorado, to a post in Chicago, Illinois. Enroute he visited his home in Nebraska. Thereafter, in his own car, departing for his post in Chicago, he was involved in an accident in Freemont, Illinois. It was there held that a serviceman reporting from one base to another is no different from any other employee reporting for work.

At page 507 of 247 F.Supp., it is stated:

"* * * travel by an employee is not within the scope of employment unless it is in furtherance of the specific duties the employee was hired to perform, notwithstanding the fact that, insofar as the *employee* is concerned, his motivation for travel bears some relation to a business purpose and might have benefited his employer. For example, when traveling to work, an employee is preparing to perform his business duties. In doing so, however, he is engaged in *his* business and not the business of his employer. His arrival at work is theoretically necessary to further his employer's business, but that in itself does not require a finding that the act of travel is within the scope of his employment. (Emphasis in the opinion)

On page 510 of the same opinion, the District Court stated:

"The fact that a soldier is returning to duty at the time of the accident (whether to a new duty station or to the post at which he was previously assigned) does not establish a distinction from the general rule that a vacation suspends the employment relation. The plaintiffs suggest that the fact that the Army 'ordered' the return while civilians generally return to work of their own free will is a meaningful distinction. To so hold would be to establish an illogical distinction between military personnel and other employees simply because the federal government finds itself in the dual role of an employer and a military establishment which operates by issuing 'orders'. The waiver of sovereign immunity pursuant to the Tort Claims Act is based on the policy of placing the United States in the same position as a private employer with respect to liability. It is not designed to extend the scope and application of the doctrine of respondeat superior because of unique practices which are necessary to the operations of the military establishment. See Chapin v. United States, 258 F.2d 465, 468, 469–470 (9 Cir. 1958)."

In affirming the District Court, the Circuit Court of Appeals for the 7th Circuit stated 367 F.2d at page 134 of its opinion:

"The United States was unconcerned as to how the employee reached the employment post, and had no control over the means or course of his travel. * * * There was no convenience to the United States whatever mode of travel he used, but only his convenience. He was on leave, on his own time, and until he reported to his Chicago post the United States was not responsible for his negligence."

█ In the instant case, Sergeant Mosley was subject to no control by the

United States, other than that always present in the military branch of the government, over his activities once he left Fort McNair. Mosley chose his own means of travel, the route and time of departure. During the course of his leave, he furthered no interests of the United States, but solely those of his own. He was as any other employee returning from vacation to his place of employment at the time of the accident. The Government was disinterested in Mosley's travel to Texas and Colorado, and was solely concerned with his arrival at Fort Dix, by noon, on December 14, 1962 to assume his active military duties. Moreover, at the time of the accident, Mosley was some 15 hours late in reporting to his post. Accordingly, he was absent without leave or authority, and thus outside the scope of his employment. Under New Jersey law, where the act of an employee is unauthorized and unconnected with the employer's business, there is no "scope." See Wright v. Globe Porcelain Co., supra. Sergeant Mosley was on a leave status commencing 12:01 A.M., November 14, 1962, until noon, December 15, 1962. From noon, December 15, 1962 he was in an absent-without-leave status, during which period he was not acting in the line of duty within the meaning of 28 U.S.C. § 2671 at the time the accident occurred. His presence on the New Jersey Turnpike, at the time in question, was completely unauthorized and in no way related to the interests of his employer.

In conclusion, the defendant, United States of America, is not responsible for the alleged negligence of Sergeant Mosley, and, accordingly, a judgment of No Cause for Action will be entered in favor of the defendant and against the plaintiff.

The foregoing shall constitute Findings of Fact and Conclusions of Law in compliance with Rule 52 of the Federal Rules of Civil Procedure.

Counsel for the Government may submit an appropriate order.